# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 93-CA-00614-SCT

*JOYCE POPE CARACCI*

*v.*

*INTERNATIONAL PAPER COMPANY, IP*
*TIMBERLANDS OPERATING COMPANY, LTD., AND*
*UNKNOWN JOBBERS*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/16/93 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | NESHOBA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | VINCENT E. CARACCI |
| ATTORNEY FOR APPELLEES: | EDWARD A. WILLIAMSON |
| NATURE OF THE CASE: | CIVIL - PROPERTY DAMAGE |
| DISPOSITION: | REVERSED AND REMANDED - 8/14/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 9/5/97 |

### BEFORE DAN LEE, C.J., PITTMAN AND ROBERTS, JJ.

### ROBERTS, JUSTICE, FOR THE COURT:

### STATEMENT OF THE CASE

¶1. The procedural history of this case began with the filing of civil action No. 7337 in the Circuit Court of Neshoba County, Mississippi by Joyce Pope Caracci against International Paper. Caracci sought relief from IP for damages to her property, specifically the filling in of her pond with runoff sediment, i.e., trespass, negligence, and gross negligence, allegedly caused when IP negligently harvested trees upstream. Caracci sought relief from IP in the amount of $200,000 in addition to requiring IP to take corrective acts to prevent any further erosion. IP filed its Answer on April 30, 1991, denying any liability. Caracci amended her complaint November 3, 1992, requesting punitive damages.

¶2. Discovery followed, however, it is from the allegedly inadequate forms of discovery that took place that resulted in the trial judge's sanctions creating the issues now before this Court. The following are the events which led to the sanctions.

¶3. **1.** IP propounded a standard expert interrogatory to the plaintiff.

¶4. **2.** Plaintiff served her initial sworn response to the expert interrogatory and stated the following:

> Southern Consultants, 114 Office Plaza, Jackson, MS 39206, 601-362-8683. Southern Consultants will testify as Engineers to the cause of the present condition of the lake and the costs of restoring the lake to its prior condition. Southern Consultants will testify that defendants directly caused the condition of the lake by their negligent stripping of the land with no effort to minimize erosion. The grounds for their opinion are personal observations.

Upon receiving this information, counsel for IP called plaintiff and indicated that he thought the response was inadequate, but Caracci said he thought that it was fine to which IP's counsel said, "Okay. I will take it up later on down the road." It was not until after IP received the Damage Assessment Report and Stewart took the stand at trial that IP brought this alleged discovery violation to the court's attention.

¶5. **3**. On May 18, 1992, Plaintiff mailed and defendant apparently received,[1]Southern Consultant's Damage Assessment Report which was identified as a supplemental interrogatory response to defendant's expert interrogatory No. 7. There was no certificate of service attached nor any separate pleading document attached to the Damage Assessment Report, and it was not supplemented under oath. It was simply mailed with a cover letter which referenced plaintiff's prior sworn response by stating that "[t]hese materials are provided to supplement my prior response to your interrogatory #7." The report estimated that it would cost $124,000 to restore the lake and make the damage repairs. Subsequently, counsel for IP contacted plaintiff and indicated that he wanted another interrogatory answer instead of the letter. Shortly thereafter, counsel for Caracci, in response to IP's inadequacy contention, purportedly mailed an unsworn Supplemental Response to Defendant's Interrogatory No.7 which referenced the materials mailed on May 18, 1992, and expressly incorporated those materials into a formal interrogatory response.

¶6. **4**. No interrogatory responses were filed with the court by the plaintiff until the second day of trial because no discovery issues were raised by defendants until the first day of trial.

¶7. On the first day of trial, IP objected to the introduction of expert testimony from Stewart on behalf of Caracci. The trial court sustained IP's objection, and Stewart was not permitted to testify as an expert in Caracci's behalf. However, Stewart was permitted to testify as a lay witness that first day.

¶8. On the second day of trial, Caracci brought to the attention of the court that he had filed, that morning, a sworn supplemental response to Defendant's first set of interrogatories. Caracci attempted to reargue the admissibility of Stewart's testimony as an expert, however, the trial judge ruled that he had already made his decision and since Stewart had already testified as a lay witness and instructed the jury as such, that he would not change his mind. At this point, IP's counsel asked the trial judge to recognize what he called a factual misstatement because an affidavit stated that he had received the report which he claimed Caracci did not give him at all. Thereafter, Caracci brought to the court's attention that IP's expert interrogatory answers which were filed with the court were likewise not under oath. Accordingly, the trial court excluded all of the defendant's expert testimony as well for not being under oath.

¶9. Next, Caracci requested that Stewart be allowed to testify as to the measurements that he had taken from his visits to Caracci's lake. IP's counsel then retorted that he challenged Stewart's method of calculation. Therefore, in spite of Caracci's assertion that this type of information and knowledge was lay knowledge possessed by most eighth graders, the trial court denied Caracci's request to allow Stewart to testify about the alleged damage to the lake using a Length x Width x Volume formula.

¶10. At the conclusion of Caracci's case, IP made a motion for a directed verdict and a motion to dismiss Caracci's complaint for failure to prove the requisite element of damages to restore her pond to the condition prior to the runoff which the trial court sustained, and dismissed the suit. Caracci filed her necessary motion for a new trial which was also denied.

¶11. Aggrieved by the lower court's decision, Caracci perfected her appeal and requests review of the following issues.

> **I. DID THE TRIAL COURT ERR AS A MATTER OF LAW BY EXCLUDING THE TESTIMONY OF PLAINTIFF'S EXPERT ENGINEERS ON THE GROUNDS THAT PLAINTIFF'S EXPERT INTERROGATORY RESPONSE WAS NOT FILED AND NOT UNDER OATH WHERE DEFENDANT'S FILED NO PRE-TRIAL MOTION TO COMPEL A CORRECTIVE RESPONSE OR OTHERWISE IDENTIFY THE ALLEGED OMISSION AS AN ISSUE OF ANY SIGNIFICANCE AND WHERE DEFENDANTS ADMIT THAT NINE MONTHS BEFORE TRIAL THEY RECEIVED FULL DISCLOSURE OF THE ENGINEER'S CERTIFIED DAMAGE ASSESSMENT REPORT IN A LETTER SUPPLEMENTING PLAINTIFF'S INITIAL SWORN INTERROGATORY RESPONSE?**

> **II. DID THE TRIAL COURT ABUSE ITS DISCRETION BY EXCLUDING THE TESTIMONY OF PLAINTIFF'S EXPERT ENGINEERS AND EXCLUDING FROM EVIDENCE THEIR CERTIFIED DAMAGE ASSESSMENT REPORT ON THE GROUNDS THAT SAID REPORT WAS INCORRECTLY TRANSMITTED TO DEFENDANTS NINE MONTHS BEFORE TRIAL BY A LETTER WHICH REFERENCED PLAINTIFF'S INITIAL SWORN INTERROGATORY RESPONSE INSTEAD OF A SEPARATELY SWORN SUPPLEMENTAL RESPONSE?**

> **III. DID THE TRIAL COURT ABUSE ITS DISCRETION BY EXCLUDING LAY TESTIMONY ABOUT THE VOLUME OF MATERIAL WHICH MIGRATED FROM DEFENDANT'S PROPERTY ONTO PLAINTIFF'S PROPERTY ON THE GROUND THAT SUCH MATTERS REQUIRED EXPERT TESTIMONY WHERE THE WITNESS DEMONSTRATED PERSONAL KNOWLEDGE BASED ON VIDEO TAPE MEASUREMENTS OF THE LENGTH, WIDTH, AND DEPTH OF THE DEPOSITS IN QUESTION?**

## STATEMENT OF THE FACTS

¶12. International Paper began harvesting trees on its property upstream from Caracci's pond. As a result of IP's alleged negligent harvesting, large amounts of sedimentary deposits (sand) were washed downstream, and into Caracci's pond. Accordingly, Caracci sought compensation from IP, which denied liability.

¶13. The following are the portions of the transcript which explain what transpired, resulting in the evidence-excluding sanction against the plaintiff:

Q. Okay. In June of 1989, what did Mr. McRae report he observed?

A. Well, he indicated --

BY MR. WILLIAMSON: Your Honor, I object. May we approach the Bench?

BY THE COURT: Yes, sir.

(OFF RECORD CONVERSATION AT THE BENCH)

BY THE COURT: Let the jury be retired.

**WHEREUPON, THE JURY WAS RETIRED FROM THE COURTROOM, AND THE FOLLOWING PROCEEDINGS WERE HAD OUT OF THE PRESENCE OF THE JURY:**

BY MR. WILLIAMSON: Should I restate for the record --

BY THE COURT: Just a minute. Let me read this answer here.

(PAUSE IN PROCEEDINGS)

BY THE COURT: Let me see the rule before we go any further.

(PAUSE IN PROCEEDINGS)

BY THE COURT: All right. I will hear your objection.

BY MR. WILLIAMSON: Your Honor, my objection is that that answer to interrogatory which we received and which was not in the Court file, we have no problem with it not being in the Court file, and I am sure Mr. Caracci will want to make that a part of this record, but it is not in the Court file. He said he thought he didn't have to file it. That's fine.

It is totally inadequate as an answer to expert interrogatory. We asked for the basis of opinions, the conclusions, the factual basis, every ground he was basing an opinion on. We don't even have all the opinions, except he says we were negligent, and one or two other things, and I will ask that -- as a matter of fact, I will ask that this copy that you have just read of what they did answer, along with the question, be an exhibit to this proceeding.

BY THE COURT: To your objection?

BY MR. WILLIAMSON: Yes, sir, to our objection, for that purpose.

**ANSWER TO INTERROGATORY REFERRED TO, BEING OFFERED AS AN EXHIBIT TO OBJECTION, WAS THEN AND THERE IDENTIFIED AND MARKED AS DEFENDANTS' FOR IDENTIFICATION NO. 1 AND MADE A PART OF THE**

**RECORD HEREOF.**

BY MR. WILLIAMSON: I want to also say **we did receive another informal several page report**. I told Mr. Caracci that I wanted it answered by interrogatory. He said he thought that was fine. I said, "Okay. I will take it up later on down the road." I am taking it up now.

We don't think that is proper, because it is not under oath. It is not in answer to formal interrogatory, as required, and we want to rely on that so we can cross-examine, pinpoint them, and have a reason for understanding how they came up with these measurements, what procedure was used for these measurements, what engineering principles they based their testimony on. We don't have any of that.

Now, while I am here, and this will be an objection to be made later on, I understand also these witnesses will testify as to the cost of restoration. There is no special pleading under Rule 9 of those special damages at all. All they have asked for is an amount of money, $200,000.00, by way of general damages. They have not said in their complaint, they have not specially pled under Rule 9 those damages. That will come later. I think it is out of line at this time.

BY THE COURT: I want to get on with this. What is your response?

BY MR. CARACCI: Your Honor, the interrogatory answers that were originally filed Mr. Williamson objected to. I said, "Fine. We will get to the full blown thing." On or about May 18, 1992, I provided him the entire document, everything, everything that they rely upon. This document has exhibits to it. It shows measurements taken, depths taken, describes the methods of calculation. It has everything in there that we will --

BY THE COURT: That is not his objection. His objection is you didn't comply with the rule.

BY MR. CARACCI: I most certainly did. He insisted. No, he didn't insist. He asked me to give him another response that was in a supplementation. I sent to him, first of all, by letter.

BY THE COURT: His objection is you didn't file it under oath in the form of your answers to interrogatories.

BY MR. CARACCI: Judge, I don't believe that was his objection. He didn't object to my not filing it.

BY THE COURT: Isn't that your objection?

BY MR. WILLIAMSON: I got a copy of what I have shown you. Apparently, he is going to show you something else I did not receive.

BY MR. CARACCI: You asked me to do a formal supplementation of, you know --

BY THE COURT: All right. Look. I am going to let him make his objection, and then I am going to let you respond, and then I am going to give you an opportunity to rejoin, and I don't want any of this bickering back and forth as to what happened and so forth.

Now, Ed, you make your objection for the record, and then I am going to hear it, and then I am

going to hear from him.

BY MR. WILLIAMSON: The only thing that I have gotten from him in the way of a response to interrogatory is what you have that I want to make an exhibit. He has shown me this. I don't recall receiving a copy, but if he did, that is still not an adequate response. It is not under oath. I didn't receive that.

BY THE COURT: Have you finished?

BY MR. WILLIAMSON: Yes, sir.

BY THE COURT: All right. Now, I will hear from you.

BY MR. CARACCI: Judge, I would like to tender this as an exhibit where I confirmed, pursuant to his request, that it was a supplementation, formal supplementation, of interrogatory answer. Well, I had already provided him my full blown report, as that indicates, May 19, 1992.

Now, I would also further note that the objection is untimely, in the sense that we have, you know, we have gone along for months and months and months, and if he had a problem with a signature on a piece of paper about this damage report that has been signed, and these people are standing here ready to give sworn testimony, he could have raised that, and this would be no problem to take up the Court's time or our time.

It is absolutely prejudicial to the Plaintiff's case at this point for him to wait so long to note this. He could have moved earlier to exclude the expert opinion on that ground. He did not.

BY THE COURT: Do you have rejoinder?

BY MR. WILLIAMSON: No, Your Honor.

BY THE COURT: Mrs. Gilmer, **take this as the statement of the Court**. It appears that the Plaintiff, Joyce Caracci, answered the interrogatories propounded unto her by the Defendant, and in response to Interrogatory No. 7, which was, "Please list each expert witness with whom you have consulted or whom you intend to call as a witness in this case, providing for each the following."

The response to that interrogatory was, "Southern Consultants, 117 Office Plaza, Jackson, Mississippi," with a telephone number, saying that, "Southern Consultants will testify as engineers as to the cause of the present condition of the lake, and the cost of restoring the lake to its prior condition. Southern Consultants will testify that Defendants directly caused the condition of the lake by their negligent stripping of the land, with no effort to minimize erosion. The grounds for their opinion is personal observation. A curriculum vitae will be provided at the time of trial."

The supplemental response to Interrogatory No. 7 provides that, "The damage assessment report provided to the Defendants on or about May the 18, 1992, along," and so forth. **At any rate, it is not a sworn to supplemental response**.

Mr. Williamson objects, in that the response does not conform to rules of civil procedure, in

that the Plaintiff's supplemental response was not sworn to, and it did not set out the opinions and summaries as required by the rule, Rule 26.

Further, he states that he did not receive a copy of the Plaintiff's supplemental answer, and the copy, there is nothing in the file, or at least the original of the supplemental response is not in the Court file.

BY MR. WILLIAMSON: That is our office file, Your Honor, and it is not in it, if I may just state, what you just looked through, and it is not in there either.

BY THE COURT: It is not in the Court file. Mr. Caracci states that he mailed it to him, and that he furnished him with the materials of the witness that shows the measurements and opinions and thus forth.

It is the opinion of this Court that the purpose of Rule 26 in discovery requiring the identity of experts, and to require that they give the substance of their testimony in sworn responses, must be complied with. **I don't think it is sufficient to furnish an unsworn supplement even though the information may have been given in the form of other findings of the witness**.

Therefore, the objection is sustained.

I will not permit this witness to testify as an expert. I will permit him to give his general observations as a lay witness, if you care to offer him as such.

BY MR. CARACCI: Yes, Your Honor, we will.

BY THE COURT: I understood you to say you visited the property; is that correct?

BY THE WITNESS: Yes, sir.

BY THE COURT: He will not be permitted to give his opinion as an expert. Anything else out of the presence of the jury?

BY MR. CARACCI: No, Judge. I presume your ruling will apply to Mr. Lunardini?

BY THE COURT: If that is true, for failure to comply with the rules of civil procedure. Bring in the jury.

**WHEREUPON, THE JURY WAS RETURNED TO THE JURY BOX, AND THE FOLLOWING PROCEEDINGS WERE HAD IN THE PRESENCE OF THE JURY:**

**CONTINUATION OF DIRECT EXAMINATION BY MR. CARACCI:**

Q. Mr. Stewart, in January of 1981, did you personally visit the lake in an effort to determine the quantity of sediment that had eroded from International Paper property to the Caracci property?

A. On January the 8th, 1991.

Q. `91.

A. I went up there. Me and an associate in my office, we both went up there.

Q. Okay; and, what -- did you keep a record of that visit?

A. We did, yes, sir. I took a video camera with me.

Q. Took a video with you?

A. Yes, sir, I took a video tape.

BY MR. CARACCI: Your Honor, we would request permission to set up and show the video record of his visit to the site, and his personal observations.

BY THE COURT: Do you have an objection?

BY MR. WILLIAMSON: No, Your Honor. I have no objection.

(TELEVISION SET IS SET UP IN COURTROOM TO PLAY THE VIDEO TAPE)

¶14. After the admissibility of plaintiff's intended expert testimony was decided, the plaintiff continued with Stewart as a lay witness, but without his Damage Assessment Report which contained the specifics of what was needed to restore Caracci's lake. Eventually, Caracci rested her case, causing the following to transpire, which is insightful into the trial judge's previous ruling.

**PLAINTIFF RESTS**

\* \* \* \* \* \* \* \* \*

BY MR. WILLIAMSON: We have motions, Your Honor.

BY THE COURT: I am going to let this jury be retired, please.

**WHEREUPON, THE JURY WAS RETIRED FROM THE COURTROOM, AND THE FOLLOWING PROCEEDINGS WERE HAD OUT OF THE PRESENCE OF THE JURY:**

BY THE COURT: All right. Make your motion.

BY MR. WILLIAMSON: Your Honor, comes now the Defendant and moves the Court to exclude the evidence offered on behalf of the Plaintiff, and to direct a verdict, and dismiss the case of the Plaintiff.

In support of that motion, Your Honor, we would point out what I think the Court probably has in its mind by simply making the motion. There is no liability proof, number one. Let's talk about that, if I may. Hall vs. Hood requires two things, basically, or two specifics.

Number one, an unreasonable use of the property by an upstream or another landowner, and a failure to take reasonable, reasonable, measures, not unreasonable, not extraordinary, but reasonable measures to lessen, not totally eliminate, damage to the, in this case, downstream landowner.

BY THE COURT: Let me hear from you on proof of damages.

BY MR. WILLIAMSON: There has been none. Number one, Your Honor, there is absolutely -- well, let's back up.

The Plaintiff has heard before this Court --

BY THE COURT: This is argument, Mrs. Gilmer. You don't have to take the argument.

BY MR. WILLIAMSON: Okay.

BY THE COURT: You have made your motion for directed verdict for failure of proof of liability and damages.

BY MR. WILLIAMSON: Yes, sir.

BY THE COURT: All right.

BY MR. WILLIAMSON: The only measure of damages that the Plaintiff can put on is restoration by his own motion in limine. He has achieved an order saying that was his measure of damages. That is a special damage, number one.

Number two, there has been no proof of it. There was no allegation of special damages, no allegation of the restoration expenses in the complaint, no itemization of those expenses in the complaint, as we are required by Rule 9 of Mississippi Rules of Civil Procedure, and number three, there is absolutely no proof, not one dollar, regarding what damage, any kind of damage, that has been, if any, incurred by the Plaintiff.

BY THE COURT: I must make a phone call at this time, but when I return, I will hear from you.

(PAUSE IN PROCEEDINGS)

BY THE COURT: All right. Mr. Caracci?

BY MR. CARACCI: Your Honor, I think liability in this case is clear. The only question that has come up is the question of damages.

Mr. Williamson has suggested that the cost of repair of an injury to property is a special damage and has to be specially pleaded. I would ask the Court to refer to Rule 9 and the comments thereto. They specifically contemplate injury to property, loss of the fair market value of the property.

BY THE COURT: I want to hear from you on your proof of damages, that the jury has a guide, where you offered any proof of damages.

BY MR. CARACCI: In a case of negligence, I think all you are required to do is ask the jury to give you reasonable compensation for the harm you see that has been suffered. That is all we can ask them to do. We can't give them any -- because of the nature of what has happened in

the case, we can't give them any quantities of dirt. We can't give them any estimates of how much it would cost to move that dirt, but they have seen the dirt. They know it's there. They had a feel for it. They can see the stream runs and how it was filled up, and they know what's in the stream. They can use their common experience, and say, "Well, a reasonable amount to fix this property to cure the negligence which has occurred here, is X amount of dollars," and that is all we can do is ask them -- now the jury instructions, standardized jury instructions, in a negligence case prepared by the Supreme Court, direct that you don't have to have certain proof of damages. All you need is something to -- well, I will get it out and read it. Perhaps, that will be helpful for this argument.

(PAUSE IN PROCEEDINGS)

BY MR. CARACCI: Your Honor, I am referring to what has been filed as Plaintiff's Instruction No. 16. It is the standardized language. This paragraph that I will read you is the standardized language in the Supreme Court instruction.

"In order to recover damages, they must be shown with reasonable probability both as to their nature and as to their cause. A Plaintiff does not lose his right to recover damages because he is unable to prove with absolute certainty mathematical value of his injury. If the cause of the injury is reasonably probable, you may reasonably estimate the damages, and the assessment thereof is within the discretion of the jury."

BY THE COURT: But, the jury must not resort to conjecture, surmise, or speculation. That's been the law from the time we have ever had law books. That the Plaintiff is not required to prove the exact dollar of damages, but there must be some guide given for the jury to base their judgment upon. You show a picture of an automobile which has been wrecked. The jury can see that there is damage to the automobile, but they must have some guide as to the repair of that automobile before the Plaintiff would be entitled to a judgment. If a witness testifies they have been to the doctor, the jury would know that, certainly, a doctor bill was incurred, but they would be called upon to speculate as to the amount of that bill without some doctor bill as a guide. That's what Mr. Williamson is arguing to you, and that is what I have asked for you to respond to.

BY MR. CARACCI: Well --

BY THE COURT: As far as liability is concerned, the Court is satisfied you have proved liability, to the point that the jury can pass upon it, to withstand a motion for directed verdict, but the motion that I am concerned with is the failure of your proof of damages.

BY MR. CARACCI: The only numbers that have been introduced, Judge, is $45.00 an hour, and the length, the width, the depth, of the stream. From that, the jury can determine the basic volume and use their common sense and arrive at a number from there. There are numbers to give them a guide.

BY THE COURT: Very well. I will rule then. Take this, Mrs. Gilmer. The motion has been made by Mr. Williamson for a directed verdict, to exclude the evidence, and direct a verdict in favor of the Defendant. This is a difficult motion for me to sustain. The Trial Judge in the trial

of a case views the case, as well as the jury. I sat here all of yesterday listening to the testimony, and then I saw particularly the video of the damages as offered by the witness Stewart. In this Court's opinion, that video, especially so, established that there was damage to the property of Mrs. Caracci, so that would cause the Court then to overrule a motion for a directed verdict and permit the jury to make the decision as to whether that was, in fact, damage proximately caused by the unreasonable use of the property of International Paper, without there being proper precautions taken to reduce that damage. So, this Court was, very frankly, prepared to overrule that part of the motion, because I felt that you had proven that.

Then I was called upon yesterday on whether or not you lawyers had practiced law, you and Mr. Williamson, in that you had not complied with the rules of civil procedure, rules that I disagree with, but I am still constrained to follow those rules.

One is regarding answering of interrogatories concerning the testimony of expert witnesses. Our law is that you discover the testimony of an expert witness through interrogatories, and whenever an answer is made to that, it is then incumbent upon the opposite party to come back before the Court. "Look, I am not satisfied with the answer. Give me an order directing that he fully answer these," and then you could have full discovery. I could relax the rule and permit the Plaintiff to take a deposition of the expert.

But, now, of course, that was not done. But, the rules further require that the testimony of the expert be sworn to by the party answering the interrogatories.

Well, in this case, you answered the interrogatory, but you did not comply with the law that requires full disclosure of the testimony and the opinions and the substance of the testimony.

Apparently, you might have recognized that, but then you filed an unsworn supplemental answer. It was never filed. There is nothing in the file that reflects that. **Mr. Williamson denies that you furnished him a copy. There is no certificate on your pleadings that you did serve him a copy of it**.

I sustained his objection. Then this morning, you brought to my attention that Mr. Williamson was guilty of the same thing, that he had not sworn to his answers, and I sustained your objection, saying that his experts would not be able to give testimony.

Now, without that testimony, you could have still proven your damages. You could have called some bulldozer operator. He would only have to give a guide. He says, "I have a certain size bulldozer, and I charge X number of dollars per hour. I have viewed Mrs. Caracci's property. In my opinion, it will take ten hours at a hundred dollars an hour." The jury has some guide then. They have to consider with the proof that you have offered in the way of testimony, pictures, and video; but, the jury only has now your pictures, your testimony, and the video.

Of course, as a former trial lawyer and as a Trial Judge, I attempted to help you in my rulings, and I don't mean to hurt your feelings. I don't want to do that at all, and I tried to rule in such a way that if you were listening to my rulings, I was telling you how to do it; but, you were offering matters in evidence, attempts to do things, that to me it appeared you had not had a lot of trial experience. Meaning foresight on a case such as this, as I did when I was your age and a

beginning lawyer, I associated older lawyers to help me until I learned what it was all about.

Now, as a Trial Judge sitting here ruling on matters such as this, I know that my ruling affects your mother. If I was on the jury, I probably would award some damages. So, I am going to sustain the motion. I don't think I have any alternative but to sustain it. I don't see any way I can help you. This is not a Court of equity. This is a Court of law. There's nothing I can do for you, but to follow the law. Therefore, it is followed. The motion is sustained. The complaint is dismissed.

Bring in the jury, please.

**Incidentally, for the record, I disagreed with that part of the motion regarding Rule 9 in the argument as it was made, but not in its entirety**.

**WHEREUPON, THE JURY WAS RETURNED TO THE JURY BOX, AND THE FOLLOWING PROCEEDINGS WERE HAD IN THE PRESENCE OF THE JURY:**

BY THE COURT: In the trial of a case, civil suit or criminal case, it is always the practice of the attorneys at the conclusion of the evidence of a party, to make a motion for directed verdict.

If you will recall, I told you that in the trial of a civil case, that the person who brings that cause of action has the burden of proving his cause of action by a preponderance of the evidence.

Well, at the conclusion of the evidence, the person being sued will make a motion for a directed verdict. Now, what that directed verdict is, it calls upon the Court to rule on the legal sufficiency of that evidence as to whether or not a prima facie case has been made out, whether or not at this point in time, a case has been made out that if you would retire to pass upon that evidence at that point in time, you would return a verdict for the Plaintiff. If not, you would return a verdict for the Defendant.

In this case, I ruled on legal matters that affected, apparently, the proof of certain witnesses, not of proof of that particular element, but only of the testimony that could be testified to by certain witnesses. Such as the expert testimony, because of the failure to comply with the rules of procedure.

In doing so, the Plaintiff has rested. The Defendant has made its motion for directed verdict for failure to give you a guide of proof of the cost of restoring the pond before the damage.

This Court ruled that in my opinion, the Plaintiff had made out a case of liability, or responsibility. That is another word for it. To let you then pass upon whether or not you believe there was sufficient evidence of responsibility; but, I sustained that part of the motion that deal with the failure of proof of damages.

If I show you a photograph of my car that has been involved in an accident, you can look at it, and you would know that that car was damaged. The photograph would clearly show there was obvious damage to my car; but, I must go farther. I can't say, I as an owner of that car, it is going to cost $586.00 to fix my car. I have got to bring someone who knows, and he is going to sit down and testify it is going to cost $586.00 to fix Judge Gordon's car.

If I go to the doctor, and I say I have been to a doctor, well, you know that there's a charge for it, but the bill of the charge is evidence of how much it is.

A person doesn't have to prove his damages to the exact cents, but it must be some proof so that you would not be called upon to speculate, surmise, or conjecture as to the amount of damages.

You saw photographs of the sand, filled creeks, and all, the plunger as it was plunged into the ground; but, there must be some evidence of how much it's going to cost to restore that pond to its condition.

Well, an expert can give a kind of guide by determining the amount of sand that is within that pond. Some expert who has knowledge can possibly establish that it will cost "X" number of dollars to hire a bulldozer at a hundred dollars an hour, and it would take him two weeks to do it, and give you some guide. So, then you can determine how much it is going to cost by the exercise of what you know about life, too, you see. Or, some person who builds ponds can go out there and look and see and say, "Well, it will take me two weeks at a hundred dollars an hour." You would have some guide.

**That was not offered to you**. So, this Court has no discretion. This is not a Court of equity. A Court of equity can adjust things. I'm a Court of law. Meaning you either prove it, or you don't prove it.

I have given a directed verdict, and this case ends at this time.

¶15. It is from the above reproduced decision of the trial court that Caracci has based this appeal. Based on the above excerpted testimony, it appears to this Court that the trial judge resorted to the option of last resort for a discovery violation, namely excluding testimony and evidence, although the defendant does not appear to have been "ambushed" at trial. IP's counsel admits at one point of having received a several page report from Caracci, but then turns around and says that he never received any thing at all in the form of an expert report. Furthermore, IP's counsel stated that even if he had received it, which he was unsure about, that Caracci's supplemental response in the form of a damage report was not under oath and therefore, should have been excluded nevertheless. Knowing that an interrogatory response is not under oath and waiting until trial to bring this violation to a court's attention is "trial by surprise." A result and method of practice that was buried with the 1982 adoption of our rules of civil procedure. *Harris v. General Host Corp.*, 503 So. 2d 795, 796 (Miss. 1987) ("We have long been committed to the proposition that trial by ambush should be abolished. . . .")

**DISCUSSION OF THE ISSUES**

**I. DID THE TRIAL COURT ERR AS A MATTER OF LAW BY EXCLUDING THE TESTIMONY OF PLAINTIFF'S EXPERT ENGINEERS ON THE GROUNDS THAT PLAINTIFF'S EXPERT INTERROGATORY RESPONSE WAS NOT FILED AND NOT UNDER OATH WHERE DEFENDANT'S FILED NO PRE-TRIAL MOTION TO COMPEL A CORRECTIVE RESPONSE OR OTHERWISE IDENTIFY THE ALLEGED OMISSION AS AN ISSUE OF ANY SIGNIFICANCE AND WHERE DEFENDANTS ADMIT THAT**

**NINE MONTHS BEFORE TRIAL THEY RECEIVED FULL DISCLOSURE OF THE ENGINEER'S CERTIFIED DAMAGE ASSESSMENT REPORT IN A LETTER SUPPLEMENTING PLAINTIFF'S INITIAL SWORN INTERROGATORY RESPONSE?**

**II. DID THE TRIAL COURT ABUSE ITS DISCRETION BY EXCLUDING THE TESTIMONY OF PLAINTIFF'S EXPERT ENGINEERS AND EXCLUDING FROM EVIDENCE THEIR CERTIFIED DAMAGE ASSESSMENT REPORT ON THE GROUNDS THAT SAID REPORT WAS INCORRECTLY TRANSMITTED TO DEFENDANTS NINE MONTHS BEFORE TRIAL BY A LETTER WHICH REFERENCED PLAINTIFF'S INITIAL SWORN INTERROGATORY RESPONSE INSTEAD OF A SEPARATELY SWORN SUPPLEMENTAL RESPONSE?**

**III. DID THE TRIAL COURT ABUSE ITS DISCRETION BY EXCLUDING LAY TESTIMONY ABOUT THE VOLUME OF MATERIAL WHICH MIGRATED FROM DEFENDANT'S PROPERTY ONTO PLAINTIFF'S PROPERTY ON THE GROUND THAT SUCH MATTERS REQUIRED EXPERT TESTIMONY WHERE THE WITNESS DEMONSTRATED PERSONAL KNOWLEDGE BASED ON VIDEO TAPE MEASUREMENTS OF THE LENGTH, WIDTH, AND DEPTH OF THE DEPOSITS IN QUESTION?**

¶16. In *Barnes v. Confidential Party*, 628 So. 2d 283, 291(Miss. 1993), this Court stated that:

> . . . our standard of review of sanctions for discovery violations generally was stated in *Cooper v. State Farm Fire & Cas. Co.,* 568 So. 2d 687, 693 (Miss.1990):
>
> Our standard for review is whether the trial court abused its discretion in its decision. This Court must decide whether the . . . court could have entered the order which it did. Under this standard, this Court will affirm unless there is a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors. *Cooper v. State Farm Fire & Cas. Co.,* 568 So. 2d at 693 (cites omitted). *See also Kilpatrick v. Mississippi Baptist Medical*, 461 So. 2d 765, 767 (Miss. 1984); *Clark v. Mississippi Power Co.,* 372 So. 2d 1077 (Miss. 1979).

¶17. "Lower courts should be cautious in either dismissing a suit or pleadings or refusing to permit testimony . . . . The reason for this is obvious. Courts are courts of justice not of form. The parties should not be penalized for any procedural failure that may be handled without doing violence to court procedures." *Clark v. Mississippi Power Co.,* 372 So. 2d 1077, 1078 (Miss. 1979); *see also Ladner v. Ladner*, 436 So. 2d 1366, 1370 (Miss. 1983).

¶18. Caracci contends that *Denman v. Hardy*, 437 So. 2d 426, 429 (Miss. 1983), wherein this Court construed Miss. Code Ann. § 13-1-237, discovery prior to the adoption of our rules of civil procedure, is our seminal case and controls the case *sub judice*. The principle offered from *Denman* is that where a party's response to an interrogatory is considered "incomplete or evasive", it is incumbent upon the party alleging the inadequateness to make a motion for a court order compelling further discovery information to be disclosed before sanctions may be imposed. *Id*. However, the former statutory distinction between "totally" failing to respond or responses of "absolutely no substance" versus "incomplete or evasive" answers to discovery requests with regard to the remedy

for such has been dissolved by M.R.C.P. 37(a)(3), which considers evasive or incomplete answers to be treated as a total failure to answer.

¶19. Under our rules of civil procedure, failure to make or cooperate in discovery should first be resolved by making a motion in the proper court requesting an order compelling such discovery. *See* M.R.C.P. 37(a)(2). The remedy for failing to comply with the discovery requests when the trial court grants an order to compel falls under M.R.C.P. 37(a)(4) in the form of awarding the moving party the expenses for such motion. *See* M.R.C.P. 37; *January v. Barnes*, 621 So. 2d 915, 922 (Miss. 1992). After such an order to compel has been granted under M.R.C.P. 37(a)(2), and the party ordered to answer fails to respond, then the remedy may be sanctions in accordance with M.R.C.P. 37(b). *See* 8 Wright & Miller, Federal Practice and Procedure: Civil § 2050 (1970).

¶20. The Comment to M.R.C.P. 37 states that M.R.C.P. 37(e) was added so that a trial court would have more flexibility in summarily dealing with discovery violations. The example provided by the Comment, which is qualified as just being an example and not intended to be the exclusive remedy, speaks of imposing monetary sanctions at the conclusion of the case where a party has failed to make "proper discovery." It would appear that failure to have an interrogatory signed under oath would fall into the category of "improper discovery" and thus be subject to a monetary fine, but not complete exclusion of testimony by persons present at trial.

¶21. Caracci contends that the sanction imposed by excluding evidence was an abuse of discretion by the trial court in light of *State Highway Commission of Mississippi v. Havard,* 508 So. 2d 1099, 1104 (Miss. 1987). "Where the answer may at worst be held 'evasive,' the discovering party must seek and obtain an order compelling a more detailed response as a precondition of obtaining Rule 37(b) sanctions--one of which is preclusive of use of non-disclosed evidence." *Id*.; *Denman v. Hardy*, 437 So.2d 426, 429 (Miss. 1983). Thus, Caracci maintains that because she did provide a fairly detailed explanation under oath, and because she sent the supplemental damage report to IP, although not under oath, that IP should have been required to get an order to compel prior to the imposition of Rule 37(b) sanctions pursuant to the language of Rule 37, *Denman* and *Havard*.

¶22. From the record before this Court, it appears that IP had long been aware of Caracci's deficiencies in answers to discovery. IP failed to bring the deficiencies to the lower court's attention, but chose to wait until trial to object to the discovery violations and then asked the court to deny the expert testimony. This Court finds that IP was required to ask the circuit court to compel Caracci to comply with discovery requests.

¶23. Although not on point, this Court has previously considered excluding evidence as discovery sanctions. In *Herrington v. Herrington*, 660 So. 2d 215 (Miss. 1994), a woman seeking unpaid support from her husband would not produce unaltered financial records during discovery. The husband made a motion to compel discovery, the chancellor granted the compel order, but yet the woman continued to refuse to produce unaltered bank statements. We held that under these circumstances that the evidentiary exclusion sanction was appropriate despite the fact that the order to compel was oral and not written. *Herrington*, 660 So. 2d at 218. The case *sub judice* and *Herrington* do not appear analogous as *Herrington* involved a blatant and outright refusal by a party to comply with discovery even after being ordered to compel, and the case *sub judice* does not even involve the first stage of compulsion to comply and the admitted single defect being that the

responses were not under oath.

¶24. In *Harris v. General Host Corporation*, 503 So. 2d 795, 798 (Miss. 1987), this Court held that when the identity of an expert witness, and his identity alone without an explanation of his anticipated testimony, was not disclosed until six days prior to trial, it was a sanctionable discovery violation. In the case *sub judice*, IP admits that it received Caracci's initial response to discovery, in which the expert's identity and cursory explanation of his intended testimony under oath was given. As explained above, IP was under the duty to ask the circuit court to compel Caracci to fully answer discovery.

¶25. IP contends that M.R.C.P. 5 requires that any papers involving the expert, i.e., expert interrogatories, must be filed with the court when an expert is anticipated to be used at trial. However, IP offers no authority on this contention.

¶26. IP states that Caracci failed to comply with M.R.C.P. 9 because she did not plead her special damages with particularity, however, that statement represents IP's full argument on Rule 9. The trial judge did not specifically rule on this motion, because it had held that the expert testimony was inadmissible for not having been made under oath. IP did not brief or offer any authority for this argument, therefore this Court will not consider the Rule 9 issue.

¶27. IP also contends that because Caracci never made any offer of proof as to what the excluded experts would have testified to that the trial court can not be held in error as such information never became a part of the record by proffer. *Wirtz v. Switzer*, 586 So. 2d 775, 784 (Miss. 1991). However, Caracci answers this issue in his reply brief by contending that he made an offer of proof by insisting that Southern Consultants' Damage Assessment Report, which contained all of Stewart's testimony that he would have given, be made a part of the record. The damage report was marked for identification at trial and is contained in the record on appeal.

¶28. Furthermore, IP contends that Caracci never made a motion for a mistrial or a continuance so that she could file the proper expert responses in adequate time for the defendants to prepare for cross-examination. Caracci contends that there was no need to make such a motion because the trial court had ruled that she was prohibited from offering any expert testimony because her expert interrogatory responses were not under oath.

¶29. Finally, IP contends that the exclusion of Stewart's testimony regarding his lay person calculations as to the volume of sediment in the lake was proper because there still would not have been any proof of the cost of restoration and because there was no proffer. Caracci stands by her argument about her alleged failure to proffer in the paragraph above.

¶30. The record reflects that Caracci gave IP a sworn response naming her anticipated expert and a general basis for his conclusions and opinions intended to be given at trial. Next, IP admits that it got some sort of several page report, which Caracci contends was the Damage Assessment Report, while simultaneously telling the court that it never received a formal response under oath of Caracci's expert. Then, the trial judge ruled that because the supplemental response that was given was not under oath, the most severe of all discovery penalties was the appropriate remedy. This does not conform with this Court's previous rulings on the appropriateness of particular sanctions given varying forms of discovery violations. This Court does not imply or hold that unsworn interrogatory

responses are acceptable. Rather, this Court finds the penalty or sanction for providing an unsworn supplementation to a prior sworn response should not be the complete exclusion of that evidence. Instead, the sanction should possibly be monetary, but not the destruction of a key piece of evidence when an apparent good faith effort was made to disclose the evidence.

## CONCLUSION

¶31. The trial court's imposition of Rule 37(b) sanctions was too harsh, and thus an abuse of discretion. Whether Caracci actually sent the unsworn report to IP will never be known. However, the record does reveal that IP received something even if it was not under oath. Thus, it does not appear that Caracci was attempting trial by ambush, since she contends she supplied the expert's complete report prior to trial, and since it is undisputed that IP knew who the expert was going to be together with a brief description of his anticipated testimony, albeit not extremely detailed. Accordingly, the imposition of such harsh sanctions was inappropriate.

¶32. As this Court has found on numerous occasions, the exclusion of evidence as a sanction for discovery violations should be affirmed in very limited circumstances. This does not appear to be one of those cases supporting the complete exclusion of evidence as done by the trial court. For the foregoing reasons, this Court finds the case must be reversed and remanded for a new trial.

¶33. **REVERSED AND REMANDED FOR A NEW TRIAL.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS AND MILLS, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY. SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**SMITH, JUSTICE, DISSENTING:**

¶34. The majority writes that the imposition of Rule 37(b) against the plaintiff was too harsh under the facts of this case, thus, a clear abuse of discretion by the trial court. The plaintiff's initial response to defendant's interrogatories was its answer. No other response to defendant's interrogatories was served on defendants prior to the supplemental response filed on the second day of trial, after plaintiff's witness, James Stewart, had not been allowed to testify as an expert.

¶35. It is my view that Miss. R. Civ. P. 5 requires that discovery responses be filed at a minimum, prior to trial commencing. The answer that was filed was of little substance. In fact, other than the name of the expert and a general summary of supposed testimony, the answer was absolutely of no substance or value whatsoever. The answer failed to include any monetary amount alleged as damages, nor was there any method stated as to how any damages would be arrived at, except

"personal observation." As a minimum, a monetary figure of damages should have been included in the answer. Any reliance upon *State Highway Commission of Mississippi v. Harvard*, 508 So. 2d 1099 (Miss. 1987), is misplaced. In *Harvard*, the expert, in fact did testify that the " [h]ighest and best value of the property in question is rural, residential and that the value of the property taken and the damage to the remainder is $14,200." *Id.* at 1103. Therefore, *Harvard* is distinguished from the case at bar. Here, however, no basis of liability or causation was given. To say that no specifics were provided would indeed be an understatement. *See Denman v. Hardy*, 437 So. 2d 426, 429 (Miss. 1983).

¶36. Caracci's supplemental response, the subject of the present controversy, was filed on the second day of the trial, after plaintiff's supposed expert, Stewart, had previously appeared before the jury on the preceding day of trial. More importantly, the supplemental response was not under oath. The trial court, in prohibiting any testimony from Stewart as an expert, ruled that the filing of the supplemental response was too late and that the witness Stewart had already testified. However, Stewart was allowed to testify as to his personal observations.

¶37. Caracci never requested a mistrial, nor sought a continuance in order to file a proper expert response, under oath, and with specific details stated therein. Additionally, Caracci never proffered proof so that this Court could know exactly what the offer of proof would have been, had such been allowed into evidence, in order that this Court could properly determine whether there was indeed prejudice due to the trial court's refusal to allow the expert testimony. "A litigant is entitled to make a tender of proof to enable the trial court to exercise its discretion and to make a record that can be reviewed on appeal." *Hopkins v. Youth Court of Issaquena County*, 227 So.2d 282, 285 (Miss. 1969). In *Wirtz v. Switzer*, 586 So. 2d 775, 784 (Miss. 1991), the Court noted that even where a trial court has erroneously excluded evidence, a party who wishes to preserve that issue must make a proffer, "[b]efore we will consider the matter on appeal." *Id.* See also, *Harris v. Buckston T.V., Inc.*, 460 So. 2d 828, 833 (Miss. 1984).

¶38. Returning to the case at bar, the witness was present in the courtroom and clearly available to proffer testimony, had the plaintiff so elected. Nor was the plaintiff's own testimony ever given as to the diminution in value of her property due to the timber harvesting operation conducted by International Paper.

¶39. Additionally, Caracci failed to testify regarding any efforts to restore her property to its former condition. Plaintiff's bulldozer operator, Garth Pope, was allowed to respond to plaintiff's question of how much it would cost to remove the sedimentation from her pond, but Pope stated that he had no knowledge of that. Thus, at the conclusion of plaintiff's case, there was absolutely no proof of damages caused by International Paper. There was no proof of fair market value nor any decrease in that value as a result of International Paper's actions. The trial judge's opinion clearly reflects that had plaintiff properly offered proof regarding damages, he would have allowed such testimony.

¶40. Finally, and more importantly, the plaintiff also objected to the defendants experts for the identical reasons defendants had voiced their objections to the plaintiff's experts. The trial court imposed the identical ruling, applied the sanction, and did not allow defense experts to testify. This even handed ruling throws a completely different light on plaintiff's alleged egregious and prejudicial errors supposedly committed by the trial court. We should be hard pressed to find that under these

facts, the learned trial judge abused his discretion. I would affirm the lower court, and therefore, I respectfully dissent.

1. IP claims in its brief, and points out IP's counsel statements in the record, that it never received the Damage Report as alleged by Caracci. However, IP does not explain what was meant by its counsel when it stated that he had received another informal several page report.