# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CA-01084-SCT

*BARBARA J. ROBERT*

*v.*

*RICHARD COLSON, M.D.*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/04/97 |
| TRIAL JUDGE: | HON. JERRY OWEN TERRY, SR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ROBERT W. SMITH |
| ATTORNEYS FOR APPELLEE: | STEPHEN GILES PERESICH |
| | MARY A. NICHOLS |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | REVERSED AND REMANDED - 1/14/99 |
| MOTION FOR REHEARING FILED: | 1/28/99 |
| MANDATE ISSUED: | 4/8/99 |

**BEFORE PRATHER, C.J., McRAE AND WALLER, JJ.**

**WALLER, JUSTICE, FOR THE COURT:**

## SUMMARY

¶1. This appeal arose from a medical negligence suit filed by Barbara J. Robert against Dr. Richard Colson February 2, 1996. Robert alleged Colson committed medical malpractice when Colson negligently injured Robert's ureter during a hysterectomy. Colson propounded an interrogatory asking Robert to identify the expert witnesses she intended to call at trial. Robert answered this interrogatory September 3, 1996 by stating "No decision has been made concerning any experts which may be relied upon. This response will be supplemented at the appropriate time." Harrison County Circuit Court Judge Jerry O. Terry, issued a protective order November 14, 1996, preventing Robert from taking Colson's deposition by video.

¶2. On March 24, 1997, because Robert had failed to identify any experts, Colson moved to dismiss the case or in the alternative compel Robert to answer Colson's interrogatory and name an expert. On March 25, 1997, Robert filed a supplemental response and identified Dr. Harold Wittcoff as an expert and detailed the substance of his proposed testimony.

¶3. Judge Terry held a hearing June 16, 1997, on Colson's motion. On August 14, 1997, Judge Terry on his own motion struck Robert's supplemental answer and as a sanction dismissed the case, finding Robert's

initial answer to Colson's interrogatory was "a failure to answer at all." All motions to reconsider were denied. Robert appealed listing four issues.

**I. WHETHER IT IS A DISCOVERY VIOLATION TO ANSWER "I DO NOT KNOW" TO AN EXPERT INTERROGATORY"**

**II. WHETHER FILING A SUPPLEMENTAL ANSWER TO AN EXPERT INTERROGATORY NINE MONTHS BEFORE TRIAL IS A DISCOVERY VIOLATION**

**III. WHETHER DISMISSAL OF PLAINTIFF'S CASE WAS IMPROPER**

**IV. WHETHER PROHIBITING DR. COLSON'S VIDEO DEPOSITION WAS A VIOLATION OF RULE 30 OF THE MISSISSIPPI RULES OF CIVIL PROCEDURE**

## FACTS OF THE CASE

¶4. On January 16, 1995, Dr. Richard Colson performed a hysterectomy on Barbara Robert. Robert alleged Colson negligently injured Robert's ureter during the procedure. Robert filed suit against Colson in Harrison County Circuit Court February 2, 1996.

¶5. On April 5, 1996, Colson submitted his answer and defenses to Robert's complaint. Three days later on April 8, 1996, Colson served Robert with a "First Set of Interrogatories and Requests for Production of Documents Propounded to the Plaintiff." By May 8, 1996, the time the answers were due under Mississippi Rule of Civil Procedure 33, Robert had not responded. On May 14, 1996, Robert asked Colson for more time to produce the required discovery. Colson's counsel agreed.

¶6. By July 4, 1996, the date for completion of all discovery under Uniform Rule of Circuit and County Court Practice 4.04, Robert had not answered Colson's interrogatories. Colson wrote to Robert August 30, 1996, asking for answers to the interrogatories. On September 3, 1996, Robert answered Colson's interrogatories. These answers included the statement: "No decision has been made concerning any experts which may be relied upon. This response will be supplemented at the appropriate time." This answer was in response to Colson's interrogatory asking for a list of Robert's experts and their opinions to be discussed at trial.

¶7. On September 3, 1996, Robert also gave notice she would depose Colson October 17, 1996. Robert amended her notice of deposition October 10, 1996, and again October 15, 1996. In the second amendment, Robert indicated Colson's deposition would be taken by "oral examination and video recorder." Colson objected to a video deposition and filed a motion for a protective order preventing Robert from taking Colson's deposition by video. Judge Terry granted Colson a protective order finding Colson, "resides and practices locally and is available for trial."

¶8. Robert moved to set a date for trial and Judge Terry held a hearing, March 24, 1997. Judge Terry set the trial date for December 8, 1997.

¶9. On March 24, 1997, because Robert had failed to identify any experts, Colson moved to dismiss the case or in the alternative to compel Robert to answer Colson's interrogatory and name an expert. On March 25, 1997, Robert filed a supplemental response and identified Dr. Harold Wittcoff as an expert and detailed the substance of his proposed testimony.

¶10. Judge Terry held a hearing on Colson's motion to dismiss June 16, 1997. On August 14, 1997, Judge Terry on his own motion struck Robert's supplemental answer and as a sanction, dismissed the case, finding Robert's initial answer to Colson's interrogatory was "a failure to answer at all." All motions to reconsider were denied. Robert appealed.

## DISCUSSION OF LAW

### Standard of Review

¶11. Trial courts have considerable discretion in discovery matters and decisions will not be overturned unless there is an abuse of discretion. *Dawkins v. Redd Pest Control Co.,* 607 So. 2d 1232, 1235 (Miss. 1992).

> **I. WHETHER IT IS A DISCOVERY VIOLATION TO ANSWER "I DO NOT KNOW" TO AN EXPERT INTERROGATORY**
>
> **II. WHETHER FILING A SUPPLEMENTAL ANSWER TO AN EXPERT INTERROGATORY NINE MONTHS BEFORE TRIAL IS A DISCOVERY VIOLATION**

¶12. Seeking expert proof as allowed under Mississippi Rule of Civil Procedure 26, Colson submitted the following interrogatory to Robert on April 8, 1996:

> INTERROGATORY NO. 3: Identify fully, giving the name, address, telephone number, specialty, are a of expertise, and education and training of each expert witness that the Plaintiff or her attorneys expect to call at the trial of this case, and state the following for each such expert witness: (a) The subject matter, in specific detail, on which each expert is expected to testify; (b) The substance of all facts to which each expert is expected to testify; (c) The substance of all opinions to which each expert is expected to testify; and (d) Give a complete summary of the grounds for each opinion to which each expert is expected to testify.

¶13. On September 3, 1996, Robert submitted her answer to this interrogatory: "No decision has been made concerning any experts which may be relied upon. This response will be supplemented at the appropriate time." On March 24, 1997, Colson moved to dismiss the case or in the alternative to compel Robert to answer Colson's interrogatory and name an expert. On March 25, 1997, Robert filed a supplemental response and identified Dr. Harold Wittcoff as an expert and detailed the substance of his proposed testimony.

¶14. The trial judge found Robert had not timely filed her answers as required by Mississippi Rule of Civil Procedure 33. Rule 33(a) provides in part "[t]he party upon whom the interrogatories have been served shall serve a copy of the answers, and objections if any, within thirty days after service of the interrogatories. . . ." Miss. R. Civ. P. 33(a). The trial judge further found Robert's late answer to be a "failure to answer at all" under Mississippi Rule of Civil Procedure 37(a)(3). Rule 37(a)(3) provides "[f]or purposes of this section, an evasive or incomplete answer is to be treated as a failure to answer." Miss. R. Civ. P. 37(a)(3). The court also noted Uniform Rule of Circuit and County Court Practice 4.04(A) requires all discovery to be "completed within ninety days from service of an answer by the applicable defendant." URCCC 4.04(A). Based on his interpretation of Mississippi Rules of Civil Procedure 26, 33 and 37 and Uniform Rule of Circuit and County Court Practice 4.04A, the trial judge found Robert failed to comply

with applicable discovery requirements and found such a failure warranted a sanction of dismissal.

¶15. Robert argues the trial judge was incorrect in finding her answers were in violation of the above cited discovery rules. In support of her contention "I don't know" is an appropriate response to an expert interrogatory in the early stages of pre-trial proceedings, Robert cites *Harris v. General Host Corporation*, 503 So. 2d 795 (Miss. 1986).

¶16. In *Harris*, customer Harris brought an action against a general store for injuries caused by an improperly functioning entrance door. *Harris*, 503 So. 2d at 795-96. Harris propounded an interrogatory asking for "3. Names of all experts you intend to call." *Id.* at 796. General Host answered "As to interrogatory numbered three (3.), this has not been determined at this time." *Id.* Some months later, General Host supplemented its response and informed Harris it intended to call Dr. Christopher E. Wiggins as an expert witness. *Id.* At trial, General Host called Dr. Charles H. Allen, Jr. in rebuttal. *Id.* Harris objected to Dr. Allen's testimony because he had not been listed among the witnesses General Host intended to call at trial nor had he been listed as one of General Host's expert witnesses. *Id.*

¶17. In reversing the trial court's decision to allow Dr. Allen testify, this Court emphasized the need to seasonably disclose discoverable information.

> When at an early stage of the pre-trial proceedings, interrogatories request the names of witnesses to be called by trial, quite often the answering party may legitimately respond that he does not yet know. Recognizing this, our rules provide that responses be supplemented, particularly where the interrogatory asks for disclosure of expert witnesses. The discovery violation suggested here is not that General Host failed to list Dr. Allen at the time its initial responses were filed on February 23, 1983. Rather, our concern is that General Host did not disclose the name of Dr. Allen "seasonably" upon determining that Dr. Allen would likely be a witness and, in any event, sufficiently far in advance of trial to afford Harris and his counsel a reasonable opportunity to prepare to meet the evidence to be offered through Dr. Allen via cross-examination or otherwise.
>
> * * * *
>
> We hold that Plaintiff Harris, by filing the interrogatories in question, acquired a procedural right that General Host disclose the name of Dr. Allen within a reasonable time after it ascertained or reasonably should have ascertained that Dr. Allen would probably be called as a witness and, in any event, sufficiently in advance of trial so that Harris and his counsel might have a reasonable opportunity to prepare to meet and cross-examine the evidence to be offered by Dr. Allen. General Host clearly breached its duty to Harris in this regard.

*Id.* at 797-98 (citations omitted).

¶18. Rule 26 anticipates the circumstances when an answer of "I don't know" is appropriate. The rule also provides for seasonable supplementation of answers. We have held "seasonable supplementation" to mean soon after new information is known and far enough in advance of trial for the other side to prepare. We have not, however, set a "hard and fast rule as to what amounts to seasonable supplementation or amendment of answers." *Eastover Bank for Sav. v. Hall*, 587 So. 2d 266, 272 (Miss. 1991). Our decisions addressing what constitutes a seasonable supplementation focus on the necessity to avoid surprise at trial. *See, e.g.*, *Foster v. Noel*, 715 So. 2d 174, 182-83 (Miss. 1998) (stating Rule 26 requires strict

compliance to avoid unfair surprise); *West v. Sanders Clinic for Women, P.A.*, 661 So. 2d 714, 721 (Miss. 1995) (affirming trial court's exclusion of certain expert testimony elicited at trial but not found in answers to interrogatories and stating seasonable supplementation requires supplementation when new information renders initial response inadequate); *Motorola Communications & Elecs, Inc. v. Wilkerson*, 555 So. 2d 713, 717-18 (Miss. 1989) (requiring seasonable disclosure give enough time to prepare before trial); *Jones v. Hatchett*, 504 So. 2d 198 (Miss.1987) (stating purpose of our civil discovery procedures is to prevent trial by ambush).

¶19. In *Harris*, the disclosure of Dr. Allen as a witness took place at trial and fourteen months after the initial response to Harris's interrogatory. *Harris*, 503 So. 2d at 796. In the case *sub judice*, the disclosure of Robert's expert witness took place more than nine months before the scheduled trial date and six months after Robert's initial answer.

¶20. In finding Robert's initial answer of "No decision has been made concerning any experts which may be relied upon. This response will be supplemented at the appropriate time." to be no answer at all, the trial judge abused his discretion. Robert's initial answer was appropriate when given and was seasonably supplemented to allow Colson enough time to prepare before trial.

¶21. On this issue we reverse the trial court's dismissal of the case and remand for further proceedings consistent with this opinion.

### III. WHETHER DISMISSAL OF PLAINTIFF'S CASE WAS IMPROPER

¶22. As discussed above, Robert's answers to Colson's interrogatories were appropriate and acceptable. Because the trial judge based his decision to dismiss in part on Robert's initial delay in answering Colson's interrogatories, we find it necessary to address the parties' management of discovery and the trial judge's use of dismissal as a sanction.

¶23. To the extent possible, discovery should be managed by the parties. Only when the parties cannot resolve discovery disputes through reasonable efforts, should the trial judge become involved.

¶24. Colson propounded his first set of interrogatories on April 8, 1996. The answers to these interrogatories were due on May 8, 1996, under the thirty day time limit of Rule 33. Robert asked Colson for more time and Colson agreed. Colson wrote to Robert on August 30, 1996, asking for answers. Robert answered on September 3, 1996.

¶25. In *Caracci v. International Paper Co.*, 699 So. 2d 546 (Miss. 1997), this Court addressed the effect of an alleged discovery violation due to the failure of the plaintiff to furnish a sworn answer to an expert interrogatory. The defendant made no pre-trial motions with regard to the alleged deficiency. *Caracci*, 699 So. 2d at 547. We stated

> Under our rules of civil procedure, failure to make or cooperate in discovery should first be resolved by making a motion in the proper court requesting an order compelling such discovery. *See* M.R.C.P. 37(a)(2). The remedy for failing to comply with the discovery requests when the trial court grants an order to compel falls under M.R.C.P. 37(a)(4) in the form of awarding the moving party the expenses for such motion. *See* M.R.C.P. 37; *January v. Barnes*, 621 So. 2d 915, 922 (Miss. 1992). After such an order to compel has been granted under M.R.C.P. 37(a)(2), and the party ordered to answer fails to respond, then the remedy may be sanctions in accordance with M.R.C.P. 37(b). *See* 8 Wright

& Miller, Federal Practice and Procedure: Civil § 2050 (1970).

*Id.* at 557.

¶26. Colson made no early motions to compel Robert to answer his first set of interrogatories. Colson agreed to give Robert more time to respond and Robert did so soon there after. Colson's only motion to compel was made March 24, 1997. In this motion Colson moved the court to compel Robert to name an expert or alternatively to dismiss the case. The next day on March 25, 1997, Robert named an expert and gave the substance of his proposed testimony.

¶27. The trial judge found Robert had committed a discovery violation in failing to answer Colson's interrogatories earlier in the proceedings. As a sanction the trial judge dismissed the case. It was an abuse of discretion for the trial judge to impose the death penalty of dismissal under these circumstances.

¶28. We have repeatedly held dismissal is to be used as a sanction only as a last resort. "`Lower courts should be cautious in either dismissing a suit or pleadings or refusing to permit testimony . . . . The reason for this is obvious. Courts are courts of justice not of form. The parties should not be penalized for any procedural failure that may be handled without doing violence to court procedures.'" *Caracci*, 699 So. 2d at 556 (quoting *Clark v. Mississippi Power Co.,* 372 So.2d 1077, 1078 (Miss.1979)). *See Pierce v. Heritage Properties, Inc.*, 688 So. 2d 1385, 1388 (Miss. 1997) ("The power to dismiss is inherent in any court of law or equity, being a means necessary to orderly expedition of justice and the court's control of its own docket....Nevertheless, the trial court should dismiss a cause of action for failure to comply with discovery only under the most extreme circumstances.").

¶29. Robert's and Colson's conduct in this case is the type of conduct contemplated by *Caracci*. Discovery proceedings were controlled and managed by the parties and the trial court was involved only when Colson could not through a good faith effort persuade Robert to comply with his request to name an expert. After Robert complied, discovery continued. The trial court's imposition of dismissal as a sanction was inappropriate and an abuse of discretion.

### IV. WHETHER PROHIBITING DR. COLSON'S VIDEO DEPOSITION WAS A VIOLATION OF RULE 30 OF THE MISSISSIPPI RULES OF CIVIL PROCEDURE

¶30. Robert gave notice she would depose Colson by "oral examination and video recorder." Colson sought a protective order from the trial judge preventing a video deposition. The trial judge granted Colson a protective order finding Colson was a local physician, practiced locally and would be available for trial.

¶31. Mississippi Rule of Civil Procedure 30(b)(4) states

The notice of deposition required under (1) of this subsection (b) *may provide that the testimony be recorded by other than stenographic means*, in which event the notice shall designate the manner of recording and preserving the deposition. A court may require that the deposition be taken by stenographic means if necessary to assure that the recording be accurate. A motion by a party for such an order shall be addressed to the court in which the action in [sic] pending; a motion by a witness for such an order may be addressed to the court in the district where the deposition is taken.

Miss. R. Civ. P. 30(b)(4) (emphasis added).

¶32. We have not addressed whether Rule 30(b)(4) allows a party to notice a video deposition without stipulation by the other party or court approval. The Federal counterpart to Mississippi's Rule 30 can provide some guidance on this issue. Federal Rule of Civil Procedure 30 "confers on the party taking the deposition the choice of the method of recording, without the need to obtain prior court approval for one taken other than stenographically." Fed. R. Civ. P. 30(b) advisory committee notes. Federal Rule 30 provides in part

> The party taking the deposition shall state in the notice the method by which the testimony shall be recorded. Unless the court orders otherwise, it may be recorded by sound, sound-and-visual, or stenographic means, and the party taking the deposition shall bear the cost of the recording. Any party may arrange for a transcription to be made from the recording of a deposition taken by nonstenographic means.

Fed. R. Civ. P. 30(b)(2).

¶33. The comment to Mississippi's Rule 30 reveals Rule 30(b)(4) reversed the old statutory ban on taking depositions by other than stenographic means because "[e]lectronic recording is now reliably developed. A blanket requirement for live stenography may often entail unnecessary expense." Miss. R. Civ. P. 30 cmt. Past prohibitions on non-stenographic depositions in the federal system and in Mississippi were based on concerns related to ensuring accurate recordings of proceedings.

¶34. In the case *sub judice*, the trial judge based his protective order preventing the taking of Colson's deposition by video on the fact that Colson resided locally and would be available for trial. While this statement about Colson may be true, under the terms of Mississippi's Rule 30(b)(4) the trial court could only require the deposition be taken by stenographic means if doing so was necessary to assure the accuracy of the recording. Preventing Robert from using video to record Colson's deposition was an abuse of discretion. On remand, Robert should be allowed to use non-stenographic means, including video recording, to depose Colson if she chooses to depose him again.

¶35. We also take this opportunity to direct trial courts to allow the use of video depositions at the discretion of the party taking the deposition without any requirement of stipulation by the other party or prior court approval. Trial courts shall allow non-stenographic depositions unless a deposition taken by stenographic means is necessary to assure the accuracy of the recording.

## CONCLUSION

¶36. Robert's answer of "No decision has been made concerning any experts which may be relied upon. This response will be supplemented at the appropriate time." was acceptable under the circumstances. Robert supplemented this response in time for Colson to prepare for trial. The trial court abused its discretion in finding this answer and subsequent supplementation was a violation of discovery rules and warranted dismissal. On this issue we reverse the trial court's decision and remand the case for proceedings consistent with this opinion.

¶37. The trial court also abused its discretion in preventing Robert from deposing Colson by video. Under the terms of Rule 30, the court could only require the deposition be taken by stenographic means if necessary to ensure an accurate recording. In the future, trial courts should allow the use of video depositions at the discretion of the party taking the deposition.

¶38. REVERSED AND REMANDED.

PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, McRAE, ROBERTS, SMITH AND MILLS, JJ., CONCUR.