# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-IA-02546-SCT

*FORD MOTOR COMPANY AND WORLD RENTAL CAR SALES OF MISSISSIPPI, LLC*

*v.*

*JULIA TENNIN, INDIVIDUALLY, AND AS ADMINISTRATRIX OF THE ESTATE OF L. C. TENNIN, III, DECEASED, AND ON BEHALF OF ALL OTHER WRONGFUL DEATH BENEFICIARIES; AND PATRICIA ALEXANDER, INDIVIDUALLY, AND AS ADMINISTRATRIX OF THE ESTATE OF ANTOINE ALEXANDER, DECEASED, AND ON BEHALF OF ALL OTHER WRONGFUL DEATH BENEFICIARIES*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/01/2003 |
| TRIAL JUDGE: | HON. WINSTON L. KIDD |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | MICHAEL B. WALLACE |
| | REUBEN V. ANDERSON |
| | REBECCA  HAWKINS |
| | BARRY W. FORD |
| | WALKER (BILL) JONES,III |
| | BRADLEY WITHERSPOON SMITH |
| | ROBERT F. WALKER |
| ATTORNEY FOR APPELLEES: | FELECIA PERKINS |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | REVERSED AND REMANDED - 04/05/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

NO. 2003-IA-02547-SCT

*FORD MOTOR COMPANY AND WORLD RENTAL
CAR SALES OF MISSISSIPPI, LLC*

*v.*

*JULIA TENNIN, INDIVIDUALLY, AND AS
ADMINISTRATRIX OF THE ESTATE OF L. C.
TENNIN, III, DECEASED, AND ON BEHALF OF
ALL OTHER WRONGFUL DEATH
BENEFICIARIES; AND PATRICIA ALEXANDER,
INDIVIDUALLY, AND AS ADMINISTRATRIX OF
THE ESTATE OF ANTOINE ALEXANDER,
DECEASED, AND ON BEHALF OF ALL OTHER
WRONGFUL DEATH BENEFICIARIES*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/15/2003 |
| TRIAL JUDGE: | HON. WINSTON L. KIDD |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | MICHAEL B. WALLACE |
| | REUBEN V. ANDERSON |
| | REBECCA  HAWKINS |
| | BARRY W. FORD |
| | WALKER (BILL) JONES,III |
| | BRADLEY WITHERSPOON SMITH |
| | ROBERT F. WALKER |
| ATTORNEY FOR APPELLEES: | FELECIA PERKINS |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | REVERSED AND REMANDED - 04/05/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

*FORD MOTOR COMPANY AND WORLD RENTAL
CAR SALES OF MISSISSIPPI, LLC*

*v.*

*JULIA TENNIN, INDIVIDUALLY, AND AS
ADMINISTRATRIX OF THE ESTATE OF L. C.
TENNIN, III, DECEASED, AND ON BEHALF OF
ALL OTHER WRONGFUL DEATH
BENEFICIARIES; AND PATRICIA ALEXANDER,
INDIVIDUALLY, AND AS ADMINISTRATRIX OF
THE ESTATE OF ANTOINE ALEXANDER,
DECEASED, AND ON BEHALF OF ALL OTHER
WRONGFUL DEATH BENEFICIARIES*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/11/2003 |
| TRIAL JUDGE: | HON. WINSTON L. KIDD |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MICHAEL B. WALLACE |
| | REUBEN V. ANDERSON |
| | REBECCA  HAWKINS |
| | BARRY W. FORD |
| | WALKER (BILL) JONES,III |
| | BRADLEY WITHERSPOON SMITH |
| | ROBERT F. WALKER |
| ATTORNEY FOR APPELLEES: | FELECIA PERKINS |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | REVERSED AND REMANDED -04/05/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE COBB, P.J., DICKINSON AND RANDOLPH, JJ.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.     This case requires the Court to wade through the plaintiffs' myriad and oft-repeated

accusations of discovery abuse by the defendant to determine whether the trial court abused

its discretion in ordering a new trial based on the alleged discovery violations.  Our second

task is to evaluate whether the trial court abused its discretion in awarding attorney's fees and expenses in favor of the plaintiffs and against the defendant.

## BACKGROUND FACTS AND PROCEEDINGS

¶2.     The parties (and even the trial court) dispute how the discovery process proceeded. Because our disposition hinges on the specific orders and rulings of the trial court, we have scoured the 70-plus record volumes to develop the following timeline of key events.

¶3.     On November 2, 2001, Bradley Christian was driving north on Highway 7 in Marshall County, Mississippi, when he crossed into the southbound lane and collided at a high speed with a 1997 Ford Explorer driven by L.C. Tennin and carrying Antoine Alexander.  The collision was a left frontal, driver-to-driver impact.  Shortly after the crash, a fire started somewhere within the Explorer, and both L.C. and Antoine died.[1]

¶4.     Representatives from the two men's estates ("plaintiffs") filed suit against Ford Motor Company ("Ford"), the manufacturer of the Explorer,[2] on January 24, 2002.  They alleged that a defective fuel system caused the men's deaths because it failed to perform properly under the circumstances of the collision.

---

[1] A point of contention at trial was whether L.C. and Antoine died as a result of their injuries from the crash, or whether they survived the crash, found themselves trapped in the Explorer, and then died as a result of the fire which later engulfed the vehicle.

[2] The plaintiffs also filed suit against World Rental Car Sales of Mississippi, LLC ("World Rental"), the seller of the Ford Explorer.  Based on an indemnity agreement between World Rental and Ford, the two entities were treated as one at trial.  The references in this opinion to "Ford" or "the defendant" also include World Rental where appropriate.

4

¶5.     On January 29, 2002, Ford received Plaintiffs' First Set of Interrogatories and First Set of Requests for Production.  A request for production concerning crash test reports  was to become a flash point in the discovery process.  It stated:

> **REQUEST FOR PRODUCTION NO. 6**: Crash test reports for crash tests involving frontal, side or rear impacts, whether full, angled, or partial overlap, with any Ford Explorer, which were conducted by or for the defendants from the inception of the initial design of the Ford Explorer up to the date of the trial of this lawsuit, including without limitation, evaluations, demonstrations, experiments or tests (static or dynamic) used by engineering as a basis for instructive analysis of the incident.

¶6.     Ford served the plaintiffs with its response to the interrogatories and requests for production on March 15, 2002.  The response was prefaced by "General Objections" to all of the plaintiffs' requests, including the following:

> 1.     The Ford vehicle at issue in this litigation is a 1997 Ford Explorer.  To the extent Plaintiffs' Interrogatories seek information relating to vehicle models or model years other than the 1997 Ford Explorer, Ford objects on the ground that such requests are overly broad and unduly burdensome, and the information sought is neither relevant to the subject matter of this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence.
>
> 2.     Ford objects to Plaintiffs' Interrogatories to the extent that they seek information protected by the attorney-client privilege, the attorney work-product doctrine or any other applicable privileges, and otherwise outside the scope of reasonable and permissible discovery provided by the Mississippi Rules of Civil Procedure.
>
> 3.     Ford's responses to these Interrogatories are made without waiving the right to object on the grounds of competency, privilege, relevance, materiality, hearsay or any other proper ground, to the use of any such information for any purpose in whole or in part in any subsequent proceeding in this action or any other action.
>
> *   *   *
>
> Ford hereby objects to these requests as a whole on the above grounds.  In order to avoid repetition, Ford also hereby incorporates these

5

objections into each of its responses set out below as if these objections were set forth in their entirety in each response. Ford has also detailed its specific objections to each Interrogatory [and Request for Production] and has responded within the scope of its objections.

¶7.    Ford also responded to most of the plaintiffs' interrogatories and requests for production with specific objections. Its response to "Request for Production No. 6" stated:

> **RESPONSE**: Ford objects to this Request on the grounds that it is overly broad and unduly burdensome in seeking information pertaining to side or rear impact crash tests as the incident at issue in this lawsuit involves a front impact collision. As written, this Request seeks documents pertaining to vehicle collisions which are substantially dissimilar to the vehicle incident which is the subject of this lawsuit. Such information is neither relevant to the issues involved in this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence. This Request is further overly broad and unduly burdensome in seeking documents pertaining to crash tests without limitation as to vehicle model year, vehicle component system tested or test purpose and encompass[es] collision impacts that are substantially dissimilar to the front impact collision that occurred in this case. As written, this Request seeks a voluminous amount of information regarding the design, development and testing of every Ford Explorer ever manufactured by Ford, "since its inception," including vehicles which are substantially dissimilar to the vehicle which is the subject of this lawsuit. Further more, this Request is objectionable to the extent that it exceeds the scope of discovery in this case which is 1995-1997 Ford Explorers. Finally, this Request is objectionable to Ford on the grounds and to the extent that it seeks documents protected from disclosure by the attorney-client privilege and attorney work product doctrine.
>
> Without waiving its objections, Ford refers Plaintiffs to Ford's response to Plaintiffs' First Interrogatories No. 8 wherein Ford agreed to produce a list of all non-privileged front impact crash tests conducted on the 1997 Ford Explorer to test the fuel system integrity of such vehicles.

Similar "specific" objections were included in the responses to most of the plaintiffs' interrogatories and requests for production.

¶8.    On April 26, 2002, plaintiffs' counsel received approximately 500 documents from Ford responding to the plaintiffs' requests, but the production did not include a point of

6

reference for the documents. That same day, plaintiffs' counsel wrote Ford's counsel insisting that the company **withdraw its general objections** and provide amended responses. Plaintiffs' counsel then sent the documents back to Ford, explaining, "I received some Ford documents in today's mail and returned the same to your office this morning. Apparently, the documents were mailed to my office in error." A handwritten note faxed to Ford from plaintiffs' counsel similarly stated, "I received this stack of papers in today's mail. This is not a discovery supplementation. I do not know why this was mailed to my office so I am returning the same." Plaintiffs' counsel neither described what defects she believed existed in the production nor asked that they be cured.

¶9.    On May 7, 2002, the plaintiffs filed a Motion to Compel, arguing that "[a]ll of the discovery propounded to Defendant Ford is within the scope of discovery. Defendant Ford has produced no documents responsive to Plaintiffs' requests for production of documents." The motion asked the court to enter an order compelling Ford to amend its discovery responses. However, the plaintiffs decided not to proceed with the motion to compel, and no ruling was made or order entered by the trial court on the motion.

¶10.    On May 16, 2002, Ford sent a letter to plaintiffs' counsel requesting the plaintiffs sign a protective order covering all "confidential, commercial and proprietary" documents produced during discovery. Plaintiffs' counsel advised Ford that she would not agree to its proposed course of action "unless and until a judicial determination is made concerning trade secrets, confidentiality, etc." While Ford would later move for a protective order on August 22, 2002, agreeing to produce additional documents upon the entry of the requested order,

7

there is no evidence that this motion was ruled on by the trial court. However, on the eve of trial, all allegedly privileged documents were ordered produced for *in camera* review.

¶11. On May 24, 2002, Ford's counsel faxed a letter to plaintiffs' counsel detailing the documents that would be sent to plaintiffs' counsel by May 29. The correspondence concluded with an explanation that the documents previously sent to plaintiffs' counsel were "responsive to Plaintiffs' discovery requests and are being returned to you immediately. They will be accompanied by a very detailed description of the materials and the discovery requests to which they are responsive." Upon receiving the two boxes of documents, plaintiffs' counsel told Ford's counsel that the documents would be returned, as they were unindexed and she could not determine the request to which each document responded.

¶12. Ford then sent plaintiffs' counsel a production chart designating the Bates-numbered documents it produced, with designations by category and numbered as to the request for production to which it responded. After reviewing the May 29 document production compared with Ford's production chart, plaintiffs' counsel noted several missing documents and alerted Ford via facsimile on June 14, 2002.

¶13. On August 19, 2002, the plaintiffs filed an Amended Motion to Compel. Specifically, in response to Ford's response to "Request for Production No. 6," the plaintiffs stated,

> [t]his request is within the purview of discovery in that it is reasonably calculated to lead to the discovery of admissible evidence. The information sought is not privileged or confidential, and it is not otherwise protected from disclosure by the Mississippi Rules of Civil Procedure, or any order of this court.

The motion concluded, "despite numerous requests, Ford has refused to withdraw the objections to all of the discovery propounded by the Plaintiffs and provide meaningful

8

responses." As their prayer for relief, the plaintiffs asked the court "to enter an Order compelling Defendant to withdraw the objections, answer the interrogatories and produce documents responsive to the request for production." However, like their initial motion to compel, the plaintiffs did not see this motion through to a ruling or order. Instead, they withdrew the motion with plans to file a second amended motion to compel.

¶14.    On August 21, 2002, the plaintiffs received the same production of documents that plaintiffs' counsel had returned to Ford on April 26, 2002. Also included in the production were the documents plaintiffs' counsel contended were missing from Ford's second production of documents. The next day, Ford provided the plaintiffs with an index of crash test documents for the 1995-1997 Ford Explorers and requested the plaintiffs designate which documents, if any, they wanted to obtain. However, Plaintiffs never responded.

¶15.    During a telephonic hearing on September 18, 2002, the trial court ordered the parties to confer in good faith to resolve this discovery dispute. The next day, Ford's counsel and plaintiffs' counsel conferred for two hours regarding Ford's discovery responses.[3] According to the plaintiffs, Ford agreed to **withdraw various objections** and supplement its discovery responses, but the company did neither. According to Ford, it agreed to withdraw its **general objections**, but it never promised to withdraw its specific objections to several of the plaintiffs' interrogatories and requests for production.

¶16.    At a hearing on September 23, 2002, plaintiffs' counsel asked the trial court to refrain from ruling on the amended motion to compel because she wanted to re-amend the motion

_____

[3] Unfortunately, a transcript of the conference is not in the record, and the parties seem to have different recollections of its substance. Much of the rancor created by these discovery issues can be traced back to these discussions.

9

to include information about Ford's alleged history of abusive discovery tactics. The court told plaintiffs' counsel to file the motion, not set the motion for hearing, and if the court had to enter an order, it would be done with sanctions.

¶17.   On September 27, 2002, Ford served a supplemental response to the plaintiffs' requests for production. The response did not include a statement of general objections and contained all crash test documents for the 1995-1997 Ford Explorers. The supplement again designated the Bates-numbered documents which were responsive to each request, but most of Ford's specific objections to individual requests were not withdrawn.

¶18.   On November 7, 2002, the plaintiffs filed their Second Amended Motion to Compel. They claimed that "[d]espite plaintiffs [sic] counsel's repeated attempts to confer with Ford, along with warnings from this Court to cooperate in discovery, Ford has failed to fully and honestly respond to plaintiffs' discovery requests." The plaintiffs included in their motion thirteen cases wherein Ford was cited for discovery violations and the following amended response to Ford's response to "Request for Production No. 6":

> This request is within the purview of discovery in that it is reasonably calculated to lead to the discovery of admissible evidence. The information sought is not privileged or confidential, and is not otherwise protected from disclosure by the Mississippi Rules of Civil Procedure, or any order of this court. Moreover, Ford attempts to limit the scope of the discovery request and should be ordered to produce **all** documents and/or tangibles responsive thereto.

(Emphasis in original).

¶19.   At some point unidentified in the record, the trial court ordered Ford to produce crash test documents relating to the 1991-1994 Ford Explorers (in addition to documents on the 1995-1997 Explorers that Ford had already agreed to produce). There is no transcript of this

10

conference or of a related order being entered. However, during the April 14, 2003, hearing, this ruling is referenced – although the parties seem to remember things quite differently.

¶20. Pursuant to the court's ruling, Ford produced nine boxes of crash test documents relating to the 1991-1994 Ford Explorers on November 22, 2002. Claiming the production was not an appropriate supplemental response, plaintiffs' counsel returned the boxes to Ford and stated that the parties could address the discovery issue with the trial court.

¶21. On November 26, 2002, the plaintiffs filed their Supplemental Second Amended Motion to Compel. In Ford's response to this motion, it explained that

> Ford has produced over 50,000 documents to Plaintiffs not only as they are kept in the usual course of business at Ford, but also in three different formats (letter, chart, supplemental responses) in its continuous and exhaustive efforts to appease Plaintiffs. Despite these efforts, Plaintiffs' counsel continues to return documents and files frivolous motions to compel.

Ford's response also included the following response to statements made by the plaintiffs regarding the company's production of documents:

> Since the Court has already ruled that Ford shall produce all front crash tests for 1991-1997 Ford Explorers and same have been produced, this issue is moot. Plaintiffs' allegations against Ford relate to a 1997 Ford Explorer involved in a frontal collision with a post-collision fire and Plaintiffs fail to provide the Court with any rationale or authority demonstrating why side or rear-impact crash test reports are relevant to Plaintiffs' claims in this case. Additionally, Mississippi Code Annotated Section 11-1-63 governs Plaintiffs' product liability claims. Section 11-1-63(a) requires that Plaintiffs establish that the subject Ford Explorer was defective **"at the time the product left the control of the manufacturer seller**." Therefore, Plaintiffs are not entitled to any information relating to Ford Explorers manufactured **after** 1997, the model year of the subject vehicle since such information is not relevant to Plaintiffs' claims or Ford's defenses under Section 11-1-63.

(Emphasis in original).

11

¶22. According to the plaintiffs, on February 12, 2003, the trial court ordered Ford to resubmit its discovery responses within ten days. The record does not contain a transcript from any hearing on this matter or a related order from the court. However, at a subsequent hearing on March 27, 2003 (for which we have the benefit of a transcript), the trial court clearly stated that Ford had been required to resubmit its responses without the general objections. Ford contended it had already complied with the trial court's previous ruling but, nonetheless, the court ordered Ford to submit its previous resubmission to the court for review, and stated that "if they're not in compliance with the Court's instructions, then the Court will enter the appropriate order." No such order was ever entered.

¶23. At the April 14, 2003, hearing, the issue of discovery was again discussed. Significantly, this was the first time the trial court made a specific ruling as to Ford's individual discovery responses. The trial court ruled as follows:

> [W]ith respect to interrogatories 5, 6, and 7 the objections shall be withdrawn. Interrogatories 5 and 6, response should be given without objections; 7 will be denied. With respect to the request for production, these documents requested in 12 and 13 shall be produced within 10 days and a supplement shall be filed withdrawing objections, and 14 will be denied.

A corresponding order was entered on April 22, 2003.

¶24. Although most of the alleged discovery problems involved the production, or lack thereof, of documents, Ford was called out by the court during the April 21, 2003, hearing for not properly responding to one of the plaintiffs' interrogatories. Ford provided two names of witnesses to the accident, John Tracey and Ben Vaughn, in an interrogatory response, but it failed to include any type of contact information. Ford had a cell phone number for one of the men and was able to find and get statements from both. Frustrated,

12

the court found that "identifying information as to John Tracey and Ben Vaughn [was not] produced to the plaintiff in a timely manner in accordance with previous orders in this court."

¶25.    On April 22, 2003, the plaintiffs filed a Motion to Order Defendant Ford to Submit Documents *In Camera*, arguing that "Ford's claim of privilege allows the company to unilaterally determine what information should be revealed without a judicial determination." This was the first time since Ford filed its motion for a protective order in August 2002 that such a motion was entertained by the trial court.  On May 23, 2003, the trial court ordered Ford to submit allegedly privileged documents to the court for *in camera* review prior to the beginning of trial on May 27, 2003.

¶26.    At yet another hearing, on May 23, 2003, Ford again skated on thin ice with respect to a discovery issue.  Ford had in its possession a standard incident report from the Waterford Fire Department which was not turned over to the plaintiffs during discovery, although they were given the document a few days before this hearing since the report was on Ford's exhibit list.  Earlier, the plaintiffs had asked for "basically anything that [Ford has] in [its] possession that [it] will use to defend [itself] in this case."  Ford explained that the report was not a Ford document, but something it found during the course of its investigation. According to Ford, "it was not produced to the plaintiff on the understanding that she was conducting her own investigation and had that document herself.  We did not intentionally conceal that."  The court did not enter any orders or rulings specific to this discovery issue.

¶27.    The trial began on May 27, 2003, and on May 29, another discovery issue arose. When Ford attempted to hand over additional documents for *in camera* review, plaintiffs' counsel requested sanctions based on Ford's failure to abide by the court's order requiring

13

the submission on May 27. Ford explained its tardiness by stating that the documents had to be gathered over a holiday weekend, so complying with the court's order took longer than anticipated. However, Ford never asked the court for an extension of time or stay of the order. The company simply produced the documents two days later than ordered.

¶28.    On May 30, 2003, the trial court entered an order regarding the documents submitted by Ford for *in camera* review, finding "that the documents shall be turned over to the plaintiffs and shall be subject to a protective order." Therefore, the court finally ordered many documents to be produced to the plaintiffs after the trial had begun.

¶29.    During trial on this day, the parties and trial judge got into another heated argument about perceived discovery violations. The familiar positions were repeated: the plaintiffs believed Ford intentionally withheld documents after the court had ordered them produced, while Ford believed it could rely on its specific objections to the production of certain documents in the absence of court orders to the contrary. Although the trial judge believed he had ordered the production of the documents at issue, the record does not bear this out.

> Ford:    We produced all frontal crash tests. There was no specific objection to us only producing the frontal crash tests which are the ones that are relevant to this case.
>
> Court:    No. What was ordered to be produced? I don't think it's necessary for there to be an objection to a production. I believe when the court orders some documents to be produced and if they're not produced, I don't think it's a requirement that there be another objection. **Did I order them to be produced?**
>
> Plaintiffs:    **Yes.**
>
> Ford:    **No, Your Honor**.
> * * * *

14

Ford:          She requested crash tests.  We produced and it's clear when we produced it that we would produce all frontal crash tests, the 30 mile per hour frontal, left front right frontal . . . because those were the relevant crash tests . . . .  There was no specific objection to the scope of production that we gave the plaintiff and there was **no order** consequently from the court that what we had done was inappropriate . . . .

* * * *

Plaintiffs:     Your Honor, that's my point.  Ford cannot unilaterally decide what's relevant and what's not relevant when the request has been made.  That is for this court to decide.  So the question is – still remains, and it doesn't have to be relevant in order to be discoverable.  Where are the crash tests?

Court:          That's law 101.  It doesn't have to be relevant.

(Emphasis added).  Later during the day, the issue of discovery was again revisited:

Plaintiffs:     We've not been provided any of these durability tests [allegedly used by Ford's expert]. . . .  And so we're now completely at a loss to impeach whether these durability tests worked.

* * * *

Ford:          We objected on the ground that . . . a request for all crash tests was overly broad and unduly burdensome in seeking information pertaining to side or rear impact crash tests as the incident at issue in this lawsuit involves a front impact collision.  As written, the request seeks documents pertaining to vehicle collisions, which are substantially dissimilar to the vehicle incident, which is the subject of this lawsuit.  And, Your Honor, **plaintiffs did bring to the Court's attention certain aspects of Ford's discovery responses.  However, this was not one of them.**  One of them was that she complained that we limited our discovery to the '95 through '97 Explorer.  This court specifically entered an order that we needed to expand our scope of discovery to the '91 through '94, as well as the '95 through '97. We immediately went back, produced everything that was responsive for that particular Explorer.  However, **plaintiffs never, never brought on for hearing to seek that this Court overrule our proper objection that was lodged to this discovery response.**

* * * *

15

Court: **With respect to the crash tests and the durability tests, the court is ordering those tests to be turned over to the plaintiffs. . . . Have them by Monday morning.**

* * * *

Ford: When plaintiffs filed the request for production of documents, Ford filed general objection [sic] to those request [sic] for productions. They also filed specific objections to each request for production. . . . [W]e remove[d] the general objections to the plaintiffs request for production of documents. And that was done even though we thought those were proper, the court asked us to remove them and we volunteered actually to remove them with Ms. Perkins. **We did not agree to nor has this court ever ordered Ford to remove specific objections to request production or interrogatories** that were outside the scope of discovery under Mississippi Rules of Civil Procedure 26. And we are entitled to make those objections. We've made them. The plaintiffs have never come to this court and filed a motion to compel certain crash tests beyond the crash tests that were produced.

* * * *

Court: With respect to the crash tests, tests that the court is ordering to be produced are the ones set forth in ["Request for Production No. 6," including tests done on the 1998 through 2003 Ford Explorers].

* * * *

Court: **[T]he order of the court is that you produce up until '97 by Monday morning.** That's the order of the court. . . . And give me a progress report on Monday morning as to the others.

¶30. On that Monday, June 2, 2003, Ford produced all crash and durability tests for the 1991 through 1997 Ford Explorer (16 or 17 boxes of documents). Ford also informed the court that the crash and durability tests for the 1998 through 2003 Ford Explorer would be ready by Tuesday, with videotapes of the crash tests available on Wednesday.

¶31. On June 3, 2003, the plaintiffs rested their case. That same day, Ford produced an additional 17 boxes of documents on the 1998 through 2003 Ford Explorer pursuant to the court's order. Plaintiffs' counsel argued that some of the documents in this production were

16

highly relevant to her case, declaring, "[t]here is no possible way that any rational attorney can argue that these are not relevant to our case. Why they were not produced needs to be addressed by this Court." We would be remiss in failing to point out that on at least three occasions, plaintiff's counsel filed Motions to Compel which they then failed to pursue. Notably, many of these documents were sent to plaintiffs' counsel back in May and June of 2002, but she returned those documents to Ford.

¶32. The parties and trial court continued their round-and-round discovery feud throughout the trial. On June 10, 2003, the jury returned a 12-0 verdict in favor of Ford.

¶33. On June 16, 2003, the plaintiffs filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial based on "**deceitful** and **false** representations and intentional omissions by Ford." (Emphasis in original). Plaintiffs' counsel also submitted an affidavit of her attorney's fees from March 2002 through June 2003, itemized by the number of hours spent on the case each month, the corresponding amount of attorney's fees incurred, and a description of her activities for that month, for a total of $326,362.50. The affidavit also included an itemization of expenses listing a description of the expense, its amount, and the date it was incurred, for a total of $177,829.21.[4] The affidavits were not accompanied by supporting documentation.

¶34. On August 1, 2003, the trial court entered an order denying the plaintiffs' motion for judgment notwithstanding the verdict and granting their motion for a new trial. The court found "that an injustice has occurred herein and that the jury verdict will not be allowed to

[4] Plaintiffs' co-counsel, Kathy Nester, submitted a similar affidavit reporting the time she spent working on the case from May 21, 2003, to June 10, 2003. Her fees amounted to $47,925.00.

17

stand. The plaintiffs were denied their right to a fair trial based upon defendants' failure to produce all relevant and discoverable documents in a timely manner." The order also awarded the plaintiffs reasonable attorney's fees against the defendants.

¶35. Ford moved to strike plaintiffs' counsel's affidavits because they did not represent the best evidence of fees and expenses incurred, but the trial court denied the motion. After reviewing the affidavits, the trial court reduced plaintiffs' counsel's rate from $225.00 per hour to $150.00 per hour, added up the time spent on the case from April through June 2003, and awarded the plaintiffs $144,600.00 in attorney's fees. The court also awarded the plaintiffs $57,262.99 in expenses representing the fees paid to experts testifying at trial.

¶36. Ford appeals both the granting of the new trial and the award of fees and expenses to the plaintiffs, presenting the following two issues on appeal: (1) whether the trial court erred in ordering a new trial and sanctions for Ford's allegedly untimely production of documents; and (2) whether the trial court erred in ordering Ford to pay more than $200,000 in attorney's fees and expenses.[5]

## DISCUSSION

¶37. We have opined that a trial court should grant a motion for a new trial "only when upon a review of the entire record the trial judge is left with a firm and definite conviction that the verdict, if allowed to stand, would work a miscarriage of justice." *Anchor Coatings, Inc. v. Marine Indus. Residential Insulation, Inc.*, 490 So. 2d 1210, 1215 (Miss. 1986).

---

[5] The plaintiffs independently raise the issue of jurisdiction. However, a panel of this Court previously considered and rejected the plaintiffs' motion to strike Ford's interlocutory appeal petitions based on perceived procedural deficiencies. The panel granted Ford's petition as to the new trial order and its conditional petition as to the money judgment, consolidating both interlocutory appeals with the direct appeal.

The trial court's granting of a motion for a new trial is reviewed for abuse of discretion. ***Green v. Grant***, 641 So. 2d 1203, 1207-08 (Miss. 1994). Additionally, "[t]rial courts have considerable discretion in discovery matters, and their decisions will not be overturned unless there is an abuse of discretion." ***Beck v. Sapet***, 937 So. 2d 945, 948 (Miss. 2006).

¶38. The assessment of reasonable attorney's fees is likewise an issue within the discretion of the trial court. ***Smotherman v. Columbus Hotel Co.***, 741 So. 2d 259, 269 (Miss. 1999).

> It is well settled in this State that what constitutes a reasonable attorney's fee rests within the sound discretion of the trial court and any testimony by attorneys with respect to such fee is purely advisory and not binding on the trial court. We will not reverse the trial court on the question of attorney's fees unless there is a manifest abuse of discretion in making the allowance.

***Deer Creek Constr. Co. v. Peterson***, 412 So. 2d 1169, 1173 (Miss. 1982). Any award of reasonable attorney's fees must be supported by credible evidence. ***Regency Nissan, Inc. v. Jenkins***, 678 So. 2d 95, 103 (Miss. 1995).

¶39. Rule 26 of the Mississippi Rules of Civil Procedure governs general discovery matters. The provisions relevant to this action state:

> (b) Scope of Discovery: Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
>
> > (1) In general. Parties may obtain discovery regarding any matter, not privileged, **which is relevant to the issues raised by the claims or defenses of any party**. . . . It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.
>
> * * * *
>
> (d) Protective orders. Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . .

Miss. R. Civ. P. 26 (emphasis added).

¶40.    Rule 34 of the Mississippi Rules of Civil Procedure governs the production of documents and things. Subsection (b), on the proper procedure to be employed, notes in part:

> [t]he response [to the discovery request] shall state, with respect to each item or category, that inspection and related activities will be permitted as requested, **unless the request is objected to, in which event the reasons for objection shall be stated.  If objection is made to part of an item or category, the part shall be specified.  The party submitting the request may move for an order under Rule 37(a) with respect to any objection to or other failure to respond to the request or any part thereof**, or any failure to permit inspection as requested.

Miss. R. Civ. P. 34(b) (emphasis added).

¶41.    Rule 37 of the Mississippi Rules of Civil Procedure provides the procedure to be followed when parties fail to cooperate in the discovery process.  The following provisions are relevant to the issues in this case:

> (a)    Motion for order compelling discovery.  A party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling discovery as follows:
>
> * * * *
>
> (2)    Motion. If . . . a party fails to answer an interrogatory submitted under Rule 33, or if a party, in response to a request for inspection submitted under Rule 34, fails to respond that inspection will be permitted as requested or fails to permit inspection as requested, **the discovering party may move for an order compelling an answer . . . or an order compelling inspection in accordance with the request**. . . .
>
> (b)    Failure to comply with order.
>
> * * * *
>
> (2)    Sanction by Court in Which Action is Pending.  If a party . . . **fails to obey an order to provide or permit discovery** . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
>
> * * * *

20

> (D) ... an order treating as a contempt of court the failure to obey any orders.
>
> In lieu of any of the foregoing orders or in addition, thereto, the court shall require the party failing to obey the order or the attorney advising him or both to **pay the reasonable expenses, including attorney's fees, caused by the failure** . . . .
>
> * * * *
>
> (e) Additional sanctions. In addition to the application of those sanctions, specified in Rule 26(d) and other provisions of this rule, the court may impose upon any party or counsel such sanctions as may be just, including the payment of reasonable expenses and attorneys' fees, if any party or counsel . . . otherwise abuses the discovery process in seeking, making or resisting discovery.

Miss. R. Civ. P. 37 (emphasis added).

¶42.    With the guidance provided by these rules, and with the proper standard of review in mind, we now consider the issues raised by Ford on appeal.

> **I.     Whether the trial court erred in ordering a new trial and sanctions for Ford's allegedly untimely production of documents.**

*Discovery orders and rulings by the trial court*

¶43.    The crux of this appeal is whether Ford disregarded rulings and orders of the trial court concerning the production of documents. The plaintiffs contend that throughout the discovery process, and through the trial itself, Ford intentionally withheld relevant documents in violation of numerous court orders. The plaintiffs highlight several comments made by the trial court about Ford's poor discovery conduct. However, in our review of the record on appeal, we find only a few orders of the court concerning discovery matters, and only one order violated by Ford.

¶44.    In its original response to the plaintiffs' interrogatories and requests for production, Ford asserted general objections applicable to every request and specific objections to

21

various individual requests. In her April 26, 2002, correspondence to Ford, plaintiffs' counsel asked the company to withdraw its general objections. Additionally, according to the transcript, the trial judge, referring to a previous order, stated that "[t]he Court indicated that defendants were required to resubmit the responses without [general] objections."[6] However, at no point did the trial court order Ford to withdraw its specific objections to all of the plaintiffs' discovery requests. In fact, the trial court could not have taken such an action. "[W]hen objections to discovery of specific documents are made, the trial court should deal with each on an item-by-item basis, carefully considering each objection, deciding whether to allow discovery, and stating the rule or exception which provides the basis for the decision." *Hewes v. Langston*, 853 So. 2d 1237, 1250 (Miss. 2003); *see also* *Miss. United Methodist Conference v. Brown*, 911 So. 2d 478, 481-82 (Miss. 2005).

¶45. For example, a ruling by the trial court on the production of non-frontal crash tests for various Explorer models – the plaintiffs' "Request for Production No. 6" – was not made until May 30, 2003, the fourth day of trial. Until then, Ford had every right to rely on its specific objection to the production based on the dissimilarity of circumstances and relevance. "A party has every right to make a good faith objection that certain interrogatories [and discovery requests] are improper." *Grant v. K-Mart Corp.*, 870 So. 2d 1210, 1214 (Miss. Ct. App. 2001); *see also* *West v. West*, 891 So. 2d 203, 219 (Miss. 2004) (parties are "bound by the rules of relevance in regard to discovery"); *Pittman v. Miss. Power & Light*

---

[6]It appears the trial judge was attempting to overrule Ford's objections and order them to respond. However, the trial judge ordered Ford to withdraw its objections, which a trial judge has no authority to do.

22

*Co.*, 368 So. 2d 238, 240 (Miss. 1979) (a motion picture reconstruction of an accident was not relevant because it contained material dissimilarities to the actual accident).

¶46.   We now take this opportunity to address the validity of "general objections" to discovery requests, like those proffered by Ford in its initial response to the plaintiffs' interrogatories and requests for production.  M.R.C.P. 34(b) specifies the duties of a party objecting to a request for production:

> The response shall state, with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is objected to in which event the reasons for objection shall be stated.  If objection is made to part of an item or category, the part shall be specified.

"General objections" applicable to each and every interrogatory or request for production are clearly outside the bounds of this rule.  If a party wishes to lodge an objection to a question or request submitted by the opposition, that party must make such objection to that specific question or request.

¶47.   Although the plaintiffs rightfully ignored Ford's general objections, which the trial court later ordered withdrawn, they could not similarly disregard Ford's specific objections.  As previously indicated, where the plaintiffs disagreed with a specific objection proffered by Ford, the proper course of action was to timely file a motion to compel and subsequently seek to obtain an order to compel.  When a party is aware of an incomplete or evasive discovery response, that party should take affirmative action by seeking an order compelling discovery pursuant to Miss. R. Civ. P. 37(a)(2).  *Warren v. Sandoz Pharm. Corp.*, 783 So. 2d 735, 743 (Miss. 2000).  In *Caracci v. Int'l Paper Co.*, 699 So. 2d 546, 557 (Miss. 1997),

we outlined the appropriate procedure under the rules for dealing with a party's failure to fully respond to discovery:

> Under our rules of civil procedure, failure to make or cooperate in discovery should first be resolved by making a motion in the proper court requesting an order compelling such discovery. *See* M.R.C.P. 37(a)(2). The remedy for failing to comply with the discovery requests when the trial court grants an order to compel falls under M.R.C.P. 37(a)(4) in the form of awarding the moving party the expenses for such a motion. *See* M.R.C.P. 37; *January v. Barnes*, 621 So. 2d 915, 922 (Miss. 1992). **After such an order to compel has been granted** under M.R.C.P. 37(a)(2), **and the party ordered to answer fails to respond**, then the remedy may be sanctions in accordance with M.R.C.P. 37(b).

(Emphasis added). *See also* ***State Hwy. Comm'n v. Havard***, 508 So. 2d 1099, 1104 (Miss. 1987) ("the discovering party must seek and obtain an order compelling a more detailed response as a precondition of obtaining Rule 37(b) sanctions").

¶48. As the passage above indicates, simply filing the motion is insufficient. It is the movant's burden to ensure that the motion is heard, ruled upon, and an appropriate order is entered by the trial court. ***Cossitt v. Alfa Ins. Corp.***, 726 So. 2d 132, 135 (Miss. 1998) ("[a] motion that is not ruled upon is presumed abandoned").

¶49. At the April 14, 2003, hearing, the plaintiffs for the first time sought trial court rulings on specific responses by Ford to their interrogatories and discovery requests. The court ordered Ford to provide all of the documents requested by the plaintiffs in Interrogatories 5 and 6 and Requests for Production 12 and 13, and Ford complied.

¶50. April 22, 2003, was the first time that the plaintiffs requested the court examine *in camera* the documents Ford claimed to be privileged. An order granting the plaintiffs' motion was not entered until May 23, 2003, four days before trial. The order required the

24

documents to be submitted to the court by May 27, 2003. **This is the only order not fully complied with by Ford**. Instead of producing all of the documents by May 27, the submission was completed by Ford on May 29.

¶51. Ford has contended from the beginning of this litigation that non-frontal crash tests on Ford Explorers other than the model at issue (1995-1997) are irrelevant to the claims at issue, since the accident here was a frontal collision involving a 1997 Ford Explorer (although Ford did abide by the court's order expanding the scope of discovery to include frontal crash tests for 1991-1994 Ford Explorers). On May 30, 2003, the plaintiffs finally asked for a ruling on their "Request for Production No. 6" asking for all crash tests for all Explorer models. The court ordered Ford to produce the requested documents in three days, and Ford complied.

¶52. When the plaintiffs followed the procedure contemplated by Rule 37 just days before and during trial, Ford produced the ordered documents.[7] A party should not be punished because the other party opted to continue complaining to the trial court about perceived discovery abuses rather than request and pursue specific action earlier in the litigation. *See Caracci*, 699 So. 2d at 557 (sanctions reversed where there was no order compelling plaintiff to fix discovery deficiencies); *Robert v. Colson*, 729 So. 2d 1243, 1247 (Miss. 1999) (sanctions for failing to timely answer interrogatories reversed where no order to compel had been entered); *January v. Barnes*, 621 So. 2d 915, 922 (Miss. 1993) (sanctions reversed where the only order to compel was substantially complied with); *Harvey v. Stone County*

_____

[7] Likewise, the production of documents post-trial was in response to the court's ruling on several of the plaintiffs' requests for production to which Ford had asserted reasonable defenses.

25

***Sch. Dist.***, 862 So. 2d 545, 550 (Miss. Ct. App. 2004) (sanction of dismissal unwarranted where plaintiff complied with trial court's only order to compel one day late); ***Warren v. Sandoz Pharms. Corp.***, 783 So. 2d 735, 741 (Miss. Ct. App. 2000) (sanctions improper where "there were no prior orders in place to compel discovery"). *Cf.* ***Amiker v. Drugs for Less, Inc.***, 796 So. 2d 942, 949 (Miss. 2002) (new trial warranted where defendant "failed to comply with orders regarding discovery"); ***Herrington v. Herrington***, 660 So. 2d 215, 219 (Miss. 1995) (monetary sanctions upheld where defendant refused to comply with the trial court's oral ruling on plaintiff's motion to compel).

¶53. In the end, Ford violated a single order of the court concerning the time frame for the submission of documents, and the documents were submitted two days late. Thus, Ford is not absolved of all fault for the discovery disputes in this case. Indeed, Ford often walked a fine line with respect to other discovery issues, such as not disclosing a potential witness's phone number and waiting to disclose a fire report it had found in its investigation. That said, while the trial court's frustration with the discovery process is understandable, we find that the ordering of a new trial after a unanimous jury verdict for the defendant, based on a perceived violation of court orders which were never placed of record, was an abuse of discretion.

*Plaintiffs never requested a continuance*

¶54. Inexplicably, the plaintiffs chose not to move for a continuance after receiving thirty-plus boxes of discoverable documents during trial. "This Court has often enforced waivers when there has been no request for a continuance." ***Kindred v. Columbus Country Club,***

26

*Inc.*, 918 So. 2d 1281, 1286 (Miss. 2005) (plaintiff waived right to complain about the exclusion of witnesses unknown until trial by failing to ask for a continuance or mistrial).

¶55.    At oral argument, plaintiffs' counsel stated that she did not want to incur the expense of a continuance or mistrial, and she further believed that the trial court would not have granted one.  From reading the trial transcript and court papers, we think the decisional risk rested more on a belief that the plaintiffs were going to prevail in the case regardless, although hindsight reveals the imprudence of this choice.  Nevertheless, the option was available to the plaintiffs, and if they were genuinely concerned about needing the information produced during trial, then the proper procedure was to request a continuance or mistrial and a claim for expenses and costs.  The plaintiffs should not get a second bite at the apple based on their questionable trial strategy.

¶56.    The trial court granted the new trial based on perceived violations of non-existent court orders.  We can find no evidence in the record showing the discovery abuses claimed by the trial court, and as such, the unanimous jury verdict in favor of Ford should not have been disregarded.  Additionally, since the plaintiffs failed to request a continuance or mistrial after the crash test and durability reports were produced during trial, they cannot now benefit from that flawed strategic decision.  Therefore, we find the trial court abused its discretion in setting aside the jury's verdict and ordering a new trial.

**II.    Whether the circuit court erred in ordering Ford to pay more than $200,000 in attorney's fees and expenses.**

¶57.    As previously noted, the issue of attorney's fees falls within the sound discretion of the trial court.  *Smotherman*, 741 So. 2d at 269.  However, where the basis for the award is

itself a product of abused discretion, so too is the award. *See, e.g.*, ***City of Jackson v. Powell***, 917 So. 2d 59, 76 (Miss. 2005) (violation of 42 U.S.C. § 1983 not proven, so award of fees pursuant thereto reversed); ***Moses v. Moses***, 879 So. 2d 1036, 1041 (Miss. 2004) (court reversed contempt judgment, so award of attorney's fees also reversed); ***Madison County v. Hopkins***, 857 So. 2d 43, 51 (Miss. 2003) (chancellor's finding of a conflict of interest held erroneous, so award of fees based thereon reversed); ***Anderson v. B.H. Acquisition, Inc.***, 771 So. 2d 914, 922 (Miss. 2000) (trial court's finding that claim was frivolous was erroneous, so award of fees based thereon reversed). In this case, the trial court's finding of multiple, intentional discovery violations was erroneous, so the award of attorney's fees and expenses to the plaintiffs (presumably under Miss. R. Civ. P. 37(e)) was consequently an abuse of discretion.

¶58.    That is not to say, though, that the plaintiffs were not owed some amount of reasonable attorney's fees and expenses. Pursuant to Miss. R. Civ. P. 37(a)(4), once a trial court has entered an order granting a motion to compel, as the trial court did in this case on April 22, 2003, with respect to the plaintiffs' interrogatories 5, 6, and 7, and requests for production 12 and 13:

> the court shall, after opportunity for hearing, require the party . . . whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.

Therefore, the trial court, after a hearing, could have assessed Ford the reasonable expenses incurred by the plaintiffs in bringing the February 24, 2003, motion to compel referenced in

28

the order.[8] *See* **Willard v. Paracelsus Health Care Corp.**, 681 So. 2d 539, 545 (Miss. 1996); **Barnes v. A Confidential Party**, 628 So. 2d 283, 291 (Miss. 1993).

¶59. Likewise, under Miss. R. Civ. P. 37(b), a trial court may impose sanctions for the failure to comply with an order. As previously stated, the only order not fully complied with by Ford was the trial court's order to submit allegedly privileged documents for *in camera* review by the start of trial. Ford ultimately complied with the order two days late. Pursuant to Rule 37(b), the trial court "shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." Therefore, the trial court could have assessed Ford the reasonable expenses incurred by the plaintiffs caused by its compliance with the court's ruling two days later than ordered.

¶60. "[A]ny testimony by attorneys with respect to [reasonable attorney's fees] is purely advisory and not binding on the trial court." **Mauck v. Columbus Hotel Co.**, 741 So. 2d 259, 269 (Miss. 1999). Under Miss. Code Ann. Section 9-1-41 (Rev. 2004):

> In any action in which the court is authorized to award reasonable attorneys' fees, the court shall not require the party seeking such fees to put on proof as to the reasonableness of the amount sought, but shall make the award based on the information already before it and the court's own opinion based on experience and observation; provided however, a party may, in its discretion, place before the court other evidence as to the reasonableness of the amount of the award, and the court may consider such evidence in making the award.

*See also* **Regency Nissan, Inc. v. Jenkins**, 678 So. 2d 95, 103 (Miss. 1995).

---

[8] This rule permits a recovery of expenses for motions to compel ruled on by the trial court, and our review of the record reveals that this is the only such motion.

¶61. This Court has also instructed trial courts to refer to the factors set forth in Rule 1.5 of the Mississippi Rules of Professional Conduct when determining the reasonableness of an attorney's fee. *Miss. Power & Light Co. v. Cook*, 832 So. 2d 474, 486 (Miss. 2002). These factors include:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

*See also McKee v. McKee*, 418 So. 2d 764, 767 (Miss. 1982). Any award of attorney's fees and expenses should be supported with factual determinations by the trial court. *Browder v. Williams*, 765 So. 2d 1281, 1288 (Miss. 2000).

¶62. The trial court may assess reasonable attorney's fees and expenses against Ford related to the order described *supra* and pursuant to the guidelines discussed. We remand the award of attorney's fees and expenses to the plaintiffs for reconsideration by the trial court.

## CONCLUSION

¶63. For the reasons herein, we reverse the trial court's order granting a new trial and its award of attorney's fees and expenses, and we remand the case for the reinstatement of the jury verdict in favor of Ford and for a determination of the amount of reasonable attorney's fees to be awarded consistent with this opinion.

30

¶64.   **REVERSED AND REMANDED**.

　　**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, CARLSON AND RANDOLPH, JJ., CONCUR. DIAZ, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, J.**

　　**DIAZ, JUSTICE, DISSENTING:**

¶65.   The majority correctly addresses the requirements for sanctions and attorney's fees. However, I respectfully disagree that the combative actions of Ford Motor Company did not warrant sanctions.

¶66.   I am concerned by the majority's calmness regarding Ford's actions. It is clear that Ford violated an order of the trial court regarding discovery, but this fact is glossed over. If a holiday was an issue in compliance, or there was difficulty in indexing the information (for Ford already had the documents in its possession), the proper response by Ford should have been to move the court for an extension of time to comply. The order of a trial court is an order that must be obeyed, and we cannot treat its violation with such a cavalier attitude.

¶67.   Likewise, the majority seems content with the brazen violations of the discovery process Ford committed. We are repeatedly informed that Ford disgorged hundreds of documents without any sort of responsive categorization or indexing, at which point counsel for the plaintiffs rightly returned them. We do not permit such "burying" or "haystacking" under our rules. *See* Miss. R. Civ. P. (b) ("When producing documents, the producing party shall produce them as they are kept in the usual course of business or *shall organize and label them* to correspond with the categories in the request that call for their production") (emphasis added). This is because we wish to "deter deliberate attempts by a producing party to burden discovery with volume or disarray or deliberately mixing critical documents

31

with others in an effort to obscure significance." *Comment*, Miss. R. Civ. P. 34. The message is simple: Litigation is to be fair and conducted in a professional manner.

¶68. Nonetheless, the majority again glosses over this chronic failure of Ford to comply with one of our most basic rules of litigation. Ford has become notorious for its foot-dragging and sandbagging during discovery, and it has an extensive history of abusing the discovery process. These actions have been rewarded with sanctions by multiple federal and state trial courts. Often the behavior is exactly the same as in today's case—refusing to categorize or index responsive documents. Ford's historical behavior also mirrors the posture in this case: it refuses to comply with discovery until immediately before trial, often resulting in continuances and further delay.

¶69. In an order in the case of *Irvin v. Ford Motor Company*, No. 2:95-CV-291PG (S.D. Miss. Nov. 1997), then-federal district Judge Charles Pickering found "that Ford did fail to disclose relevant information to Plaintiffs without justification," and on the eve of trial ordered a continuance and mandated Ford to produce certain witnesses and documents it had withheld. Likewise, in an order entered in a case filed in Holmes County Circuit Court, *Robinson v. Ford Motor Company*, No. 96-0200 (Miss. Aug. 1998), Ford was sanctioned $5,000 for its abuse of the discovery process.

¶70. Looking to Ford's actions outside of Mississippi, a federal district court in Texas sanctioned Ford for failing to comply with discovery, including failing to categorize or index documents. *Anderson v. Ford Motor Company*, No. 2:00CV136 (E.D. Tx. Feb. 2001). Because it had already been sanctioned once before in the case for similar behavior, the federal court required Ford to pay the attorney's fees required in bringing the motion and was

32

penalized in the upcoming trial by having its time for opening statement and closing argument shortened and being limited to only two peremptory strikes.

¶71. In an order entered in **Kaler v. Ford Motor Company**, No. C97-00737 (Calif. Superior Ct. Oct. 1998), Ford was sanctioned for failure to comply with various discovery issues, including failing to respond to interrogatories and objecting without valid reasons. In one Maryland federal case, **Samuel v. Ford Motor Company**, No. WMN-96-2155 (S.D. Md. June 1997), the court criticized the "unsatisfactory pace" of discovery, and noted that the case was not ready for trial because "Ford has taken the attitude that it will not do anything that it is not forced to do." That order detailed at length Ford's obstructionist behavior, ultimately forcing Ford to immediately produce witnesses and documents it had withheld, bear the costs of depositions, pay costs associated with the motion to compel, and refused to allow any Ford employee or expert who was not timely produced from testifying. *See also* **Lasar v. Ford Motor Co.**, 399 F.3d 1101, 1104 (9th Cir. 2005) (affirming sanctions against Ford for violating two pretrial in limine orders); **Kent v. Ford Motor Co.**, 200 F. Supp.2d 670, 672 (S.D. Miss. 2002) (plaintiffs were "entitled to attorneys' fees and costs pursuant to" both statute and Rule 11 of the Federal Rules for Ford's improper removal of a case).

¶72. Ford as a corporation has demonstrated an institutionalized and knowing disregard for the Rules of Civil Procedure, and specifically a hostility to the process of discovery. We should be loathe to let parties abuse our judicial system and discovery process in this way. As the Montana Supreme Court has explained, we should be mindful of "discovery abuse pursuant to our concern over crowded dockets and the need to maintain fair and efficient judicial administration of pending cases." **Richardson v. State**, 130 P.3d 634, 647 (Mont.

33

2006) (internal quotations and citations omitted). I agree that "[l]itigants who are willful in halting the discovery process act in opposition to the authority of the court and cause impermissible prejudice to their opponents," and "in this era of crowded dockets, that they also deprive other litigants of an opportunity to use the courts as a serious dispute-settlement mechanism." *Id.*

¶73. Because Ford continues to disregard the rules and values of our judicial system, I must respectfully dissent.

**GRAVES, J., JOINS THIS OPINION.**